IN RE ASSESSMENT OF THE PERSONAL PROPERTY OF L. J. MESSER COMPANY, A CORPORATION.

L. J. MESSER COMPANY, APPELLANT, V. COUNTY BOARD OF EQUALIZATION OF JEFFERSON COUNTY, NEBRASKA, ET AL., APPELLEES.

106 N. W. 2d 478

Filed December 9, 1960. No. 34822.

*Ginsburg, Rosenberg & Ginsburg* and *Norman Krivosha*, for appellant.

*Melvin Moss*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an appeal taken by the L. J. Messer Company, a corporation, plaintiff, from the finding made by the County Board of Equalization of Jefferson County, defendant, to the district court for Jefferson County as provided for in section 77-1510, R. R. S. 1943. After hearing before the trial court, judgment was rendered in favor of the defendants, and the plaintiff's petition

was dismissed. The plaintiff filed its motion for new trial which was overruled by the trial court. The plaintiff perfected appeal to this court.

For convenience we will refer to the L. J. Messer Company, a corporation, as the plaintiff, and to the County Board of Equalization of Jefferson County as the board.

This appeal contests the correctness of an adjudication made by the district court for Jefferson County in sustaining the conclusion of the board which determined the valuation of the tangible personal property of the plaintiff for taxation purposes to be $31,165.

The petition of the plaintiff on appeal, insofar as necessary to consider, alleged that the plaintiff is and was the owner of a stock of merchandise located at 520-524 Fourth Street, Fairbury, Nebraska; that on March 1, 1958, the actual value of said stock of merchandise and inventory of said store did not exceed $25,666; that the plaintiff returned the actual value of said inventory upon its business schedule for the year of 1958, as required by law; and that on May 20, 1958, the board notified the plaintiff it had changed the actual value of said inventory as shown on the schedule from $25,666 to $31,165. The plaintiff further alleged that a transcript of the proceedings before said board was filed with the petition on appeal and made a part thereof; and that notice of appeal and bond were given as required by law for appeal from the ruling of said board. The plaintiff further alleged that the order and finding of said board was unjust, arbitrary, discriminatory, and in violation of law, and fixed the valuation in excess of the actual value of said property. The plaintiff further alleged that the value so fixed by the board was not based upon any evidence or information properly known to the board and without any consideration of the evidence; that the valuation made by the board was based wholly upon plaintiff's income tax return to the United State government; that the valuation shown upon said

income tax return was not the actual value of said stock of merchandise; that although the statute of the State of Nebraska required a copy of the income tax return to be filed, which was done by the plaintiff, the statute in no manner required that the copy of such return so furnished should constitute conclusive evidence of the actual value of the property for assessment purposes; and that the actual value of said property did not exceed the sum of $25,666. Plaintiff prayed that the valuation fixed by the said board be declared erroneous and illegal.

The defendants' answer to the plaintiff's petition on appeal admitted that the plaintiff was a corporation and the owner of stock and inventory of merchandise as alleged in the plaintiff's petition; that the plaintiff made a return of the stock of merchandise and inventory in the sum of $25,666; and that after due notice the board changed the assessment of said inventory from $25,666 to its actual value of $31,165. The defendants' answer denied that the finding of the board was unjust, arbitrary, discriminatory, and in violation of law, and alleged that the valuation assessed by the board was fair and reasonable. The defendants' answer denied every other allegation of the plaintiff's petition not specifically admitted, and prayed that the plaintiff's petition be dismissed.

The pertinent assignments of error set forth by the plaintiff are as follows: The trial court erred in failing and refusing to find that the valuation fixed by the board was contrary to the law and to the evidence; and the trial court erred in failing and refusing to find that section 77-1231.01, R. R. S. 1943, does not conclusively make the taxpayer's income tax inventory report figures the actual value thereof for tax purposes.

An appeal to the district court from action of the county board of equalization is heard as in equity, and upon appeal therefrom to this court, it is tried de novo. See, LeDioyt v. County of Keith, 161 Neb. 615, 74 N.

W. 2d 455; Weller v. Valley County, 141 Neb. 69, 2 N. W. 2d 606; Collier v. County of Logan, 169 Neb. 1, 97 N. W. 2d 879.

The burden of proof is upon the taxpayer to establish his contention that the value of his property has been arbitrarily or unlawfully fixed by the county board of equalization at an amount greater than its actual value. See, LeDioyt v. County of Keith, *supra;* Chicago, R. I. & P. Ry. Co. v. State, 112 Neb. 727, 200 N. W. 996.

In Collier v. County of Logan, *supra,* this court held: "The presumption obtains that a board of equalization has faithfully performed its official duties, and in making an assessment it acted upon sufficient competent evidence to justify its action. * * * However, the presumption that a board of equalization in making an assessment acted upon sufficient competent evidence to justify its action disappears when there is competent evidence on appeal to the contrary, and from that point on the reasonableness of the valuation fixed by the board becomes one of fact based upon evidence, unaided by presumption, with the burden of showing such values to be unreasonable resting upon the party complaining."

Section 77-1231.01, R. R. S. 1943, provides in part: "As part of the return of the business schedule, for taxation, there shall be attached thereto a certified statement of the dollar amount of the inventory at the end of the fiscal year as set out in the taxpayer's latest federal income tax return, * * *. The taxpayer shall also report in his business schedule the method of determining the inventory value in the certified statement attached thereto which he reported to the Director of Internal Revenue and the date of latest physical inventory." The statute then provides a penalty for failure to comply with the provisions thereof.

Section 77-1236, R. R. S. 1943, which was enacted in 1903, provides: "For the purpose of determining the true value of the stock of any merchant or manufacturer, the assessor shall have the right to demand of such

merchant or manufacturer an inspection of his inventories and all books of accounts for the preceding year, including the annual invoice and inventory of stock made by such merchant or manufacturer last preceding such assessment and the policies of insurance carried by such merchant or manufacturer on his stock for the year next preceding his assessment."

Section 77-201, R. R. S. 1943, provides in part: "All tangible property and real property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued at its actual value * * *."

Section 77-112, R. R. S. 1943, provides: "Actual value of property for taxation shall mean and include the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other properties of known or recognized value; and (6) market value in the ordinary course of trade."

The above authorities and cited statutes are applicable to the instant case.

This brings us to a summary of the evidence.

The record discloses that the plaintiff filed with the county assessor of Jefferson County form 2a for tax assessment purposes, showing inventory values on its federal income tax return in the amount of $34,214.64, and after making adjustments for purchases and sales from December 31, 1957, to March 1, 1958, the book value of plaintiff's stock of merchandise was shown as $36,-666.94. The dollar amount shown by plaintiff's inventory at the end of the fiscal year was as above stated, $34,214.64. The date of the latest physical inventory was shown as November 30, 1957. The method used in determining the book value of the closing inventory was "Cost or Market" which will hereinafter be explained more fully by other evidence. The plaintiff claimed for obsolescence and depreciation 30 percent, or $11,000.08,

making the actual value of the inventory of the plaintiff's stock of merchandise $25,666.86. This value was changed by the assessor to $31,165, and the assessor stated in a letter to the plaintiff that 30 percent obsolescence was double what it should be, and allowed 15 percent to the plaintiff for obsolescence.

A witness who was the automotive purchasing agent for the plaintiff and had been since 1931, testified that he supervised the buying in the various stores of the Messer corporation, 15 in number, supervised the inventories, and had control of the equipment and various other matters that were incident to the inventories; that he was familiar with the manufacturers of the type of merchandise purchased by the plaintiff and the value of the same; that the Messer Company handled all automotive parts such as pistons, rings, valves, transmissions, differentials, axles, body repairs, and other items; and that it was the policy of the plaintiff to try to carry parts to cover every automobile, and to stock all commodities with reference thereto when service would be needed on such automobiles or other vehicles. This witness further testified that in addition to carrying merchandise for older models of automobiles, the plaintiff was required to purchase parts for new automobiles without being able to tell whether or not such parts would be salable. This witness also testified that when new automobiles were put on the market the plaintiff endeavored to obtain information on the same for services that might be rendered by it, and without knowing what such automobiles might require, the plaintiff bought, at a minimum, 30 percent of items that would never be salable. This witness further testified that because of the number of inventories the plaintiff was required to take in its 15 stores, a crew of men was used for this purpose. An inventory was taken of the plaintiff's Fairbury store on November 30, 1957, and from November 30, 1957, to December 31, 1957, there would be merchandise added to the stock, minus the sales of merchandise up to Decem-

ber 31, 1957. That is how the final figure of the inventories is arrived at. There are roughly 32,000 items, and each item is counted. This witness testified that it would be physically impossible to examine each item, but this witness checks the items as the same appear on the shelves in the store; and that no attempt is made at that time to evaluate the merchandise as to whether it is salable merchandise, because that would be impossible, due to the number of stores that must be inventoried and the fact that every item in each store is counted. This witness further testified that there were a large number of obsolete items such as fan belts, tractor valves, piston rings, axle shafts, car springs, shock knees, transmission gears, connecting rod bearings, etc., which are considered to be obsolete. This witness further testified that there was no inventory that was worth more than 50 percent of the book value of the merchandise; and that insofar as the plaintiff's operations were concerned, there was no way of taking the plaintiff's inventory to allow for the age of all the products or items that were on the shelves, and while such items were carried in the inventory at cost, they were actually decreased in value from 30 to 40 percent after the first year they were carried in stock. This witness further testified that in his opinion the actual value of the stock in the plaintiff's store in Fairbury as of March 1, 1958, was not more than $18,000; that jobbers constantly offer stocks of this type of merchandise for sale at discounts of from 30 to 50 percent below cost; and that all jobbers do not count their merchandise or items of stock on the shelves.

L. J. Messer testified that he had been engaged in the business of automotive parts, motor rebuilding, and machine shop operation since 1920; that there were different methods of taking inventories of automotive parts, and not all concerns take their inventories in the same way; that generally a stock of merchandise will sell at from 30 to 50 percent of the jobber's cost; that stocks

of merchandise have different values in different locations; that plaintiff specializes in "hard parts" for automobiles and tractors; and that the automotive parts business is different from other distributing businesses in that it does not lend itself to the use of sales and is confronted with a heavy obsolescence problem.

The county assessor testified that the valuation placed by him was based entirely upon the income tax figures of inventories as shown on form 2a; and that no method of ascertaining how the respective federal income tax inventory figures were arrived at by the individual taxpayer was used or known to the assessor or the board. The assessor further testified that the sale price of merchandise was not accepted as the value of same for tax purposes, and the cost price did not necessarily determine the actual value of merchandise; that the taxpayer was not required to bring in his income tax return to show whether the figure shown on the form 2a was correct or not, and no check was made to ascertain the manner in which the taxpayer arrived at the figures thereon, that is, whether the taxpayer had taken off any depreciation before making the federal income tax return; that whatever the merchant reported on his income tax return was accepted; and that this was the way the board assessed for the year 1958. The assessor further testified that in his opinion section 77-112, R. R. S. 1943, was more applicable to real estate than anything else and it was not applied to personal property because it was not applicable; and that the sole and only factor used by the board in arriving at the valuation of the inventory was the income tax figure, and this was uniformly applied by the board to all businesses in the county.

A certified public accountant, a partner of Peat, Marwick, Mitchell & Company, a large accounting firm in the United States, testified that he had been the auditor for the plaintiff corporation since 1930, and in addition had done a great deal of work in the field of wholesale and retail operations and was familiar with the methods

of accounting used therein. This witness further testified that he was familiar with the preparation of balance sheets and the examination and interpretation of such operations, including the balance sheet used in the preparation of federal income tax returns. This witness testified that the plaintiff's income tax returns for the years it had been in business had been taken on the same consistent basis, designated as "last in, first out"; that in addition to the "last in, first out" method of taking inventory there is another known as the "first in, first out" method; that the results of the two methods are not the same and do not show the same book value for the same physical inventory; that the "last in, first out" method of inventory is that in which the most recent purchases are charged to expense instead of the first or original purchases, whereas the "first in, first out" type of inventory would result in a valuation on a rising market of about 50 percent less than the amount shown by the "last in, first out" method; and that taking the same number of items, and depending upon the particular method used, you would arrive at different results as to book value. This witness further testified that the value of the stock of merchandise shown upon the balance sheet does not represent in fact the actual value of such inventory; that the inventory as shown upon the balance sheet for income tax purposes is not intended or desired to reflect the actual value of the merchandise; that the only way that the actual value of a stock of merchandise could be determined is by an investigation and examination by experts of the actual stock in question; that the balance sheet figures are generally not acceptable as the true indication of the actual value; and that the figures shown on the income tax return had no bearing on the actual value of the taxpayer's merchandise. This witness further testified that there are always items of obsolescence in any stock of merchandise that cannot be ascertained until the merchandise is actually sold or until the business is liquidated; that every business gath-

ers up unrealized losses in its inventory, being items of the inventory which will require a long period to sell or which may not be salable at all; that the slow-moving or obsolete items do not show up on the income tax return figures; and that the plaintiff was engaged in a peculiar type of business wherein price reductions would not assist in moving unsalable merchandise. This witness further testified that he was familiar with the fact that in case of the sale of a business, generally most sales end up on the basis of a discount of the book value of the inventory running to from 40 to 60 percent of the inventory figure.

A partner in the Fairbury Auto Parts Company, called by the defendants, testified that the business he engaged in was in competition with the business carried on by the plaintiff. He testified that the property of the Fairbury Auto Parts Company was listed for assessment on March 1, 1958, and in listing such business for assessment the assessor was furnished a statement such as that furnished by the plaintiff for the year 1957. With reference to parts and equipment which are not readily movable and may be classed as obsolete, this witness testified that the government permits a part of it to be written off; that the government does not permit the use of a percentage figure on deducting the inventory, that is, that it must be shown at what the items actually cost or at market value; that in making the inventory when there was an item difficult to sell, or obsolete, this item was entered at a determined valuation irrespective of the cost, and might show up on the inventory as a zero figure or at some other depreciated figure below cost; and that the Fairbury Auto Parts Company wrote off the obsolescence before the final figure or inventory taken by the partnership. This witness also testified that the Fairbury Auto Parts Company did 40 percent of its business in electrical supplies, air conditioning, and farm supplies. The plaintiff does not handle this type of merchandise.

To show the corroboration of the plaintiff's evidence by this witness called by the defendants, attention is called to his testimony as follows: "Q. And you pay on the inventory basis as listed in your Federal tax return? A. Yes. Q. And as in that form? A. That's right, even though I knew it was too high. * * * Q. And when you took your inventory you adjusted in the inventory for the obsolete merchandise that was dead? A. Yes. * * * Q. Would you say that that inventory figure that you came up with, would this represent the fair market value of your stock of merchandise, * * *? A. No. Q. Would that be more or less than the fair market value of your merchandise? A. More. Q. In other words, the inventory that you showed was in your opinion, then, actually more than the fair market value of your stock of merchandise? A. Right. * * * Q. So you would have returned approximately about half of what Mr. Winslow (the county assessor) made you return? A. Yes, sir."

A representative of the plaintiff testified, when called by the defendants, to the effect that the plaintiff carried a type of fire insurance whereby it is required to report 100 percent actual value; and that this report figure is arrived at entirely from the books of the plaintiff and does not represent the actual value for the reason that it is impossible to ascertain the actual value of merchandise each month, whereas the policy required the figure to be sent in each month.

An exhibit in evidence discloses that the plaintiff reported its insurance value at 100 percent at $36,329.39, on February 28, 1958.

It is apparent that the only reason the county taxing authorities refused to accept the plaintiff's evidence, which is in no way disputed, was that they believed that section 77-1231.01, R. R. S. 1943, imposed a mandate that the value shown on the inventory for federal income tax purposes must be accepted as the actual value of the property.

Section 77-1231.01, R. R. S. 1943, does require that in-

formation as to the federal income tax return be furnished. However, it is evident from a reading and analysis of such section that it does not stipulate that the information so furnished shall constitute the conclusive actual value of the property.

Section 77-1236, R. R. S. 1943, provides for an inspection of inventories and books of account, including annual inventories and policies of insurance. This section of the statutes has been in existence and on the statute books since 1903, and stands on an identical footing with section 77-1231.01, R. R. S. 1943.

Both of said sections of the statutes require the information to be furnished for the benefit of the taxing authorities, and so that the information therein may be weighed in arriving at the determination of what is the actual value, but neither of these statutes ever was intended to provide that the book value must be conclusively taken to be the actual value.

It appears that in the instant case the evidence discloses that the book records did not constitute a record of the true actual value of the property for the reason that in making up such book records the plaintiff's bookkeeping system did not allow for the taking of depreciation and obsolescence. Consequently, the information called for by section 77-1231.01, R. R. S. 1943, and section 77-1236, R. R. S. 1943, does not furnish the criterion as to the actual value to be placed on the stock of merchandise in question.

The record shows that the county taxing authorities did not consider the provisions of section 77-112, R. R. S. 1943, in arriving at the value of the stock of merchandise in the plaintiff's store at Fairbury.

As we read section 77-112, R. R. S. 1943, it applies to personal property as well as real estate, because it requires that in arriving at the actual value of property there shall be considered, among other matters, desirability and functional use, reproduction cost less depreciation, comparison with other property, and market

value in the ordinary course of trade. Section 77-112, R. R. S. 1943, was amended at the same session of the Legislature as section 77-1231.01, R. R. S. 1943, was enacted, and is just as controlling upon the county taxing authorities as is section 77-1231.01.

As we view the record, the evidence of the plaintiff was clearly sufficient to overcome the presumption that the board, in making the assessment, acted upon sufficient competent evidence to justify its action. However, the defendants offered no competent evidence to overcome the evidence of the plaintiff.

In the light of the foregoing, the judgment of the district court should be reversed and the cause remanded with directions that judgment be rendered fixing the actual value of the plaintiff's stock of merchandise for taxing purposes at $25,666.

REVERSED AND REMANDED WITH DIRECTIONS.