Argued at Pendleton October 30, 1923, affirmed January 22, 1924.

# CITIZENS' NATIONAL BANK OF BAKER CITY *v.* BAKER COUNTY BOARD OF EQUALIZATION.

(222 Pac. 341.)

**Taxation—Rule for State Taxation of Property of National Banks Stated.**

1.  The state's power to tax national banks is confined to their shares of capital stock and their real estate, the stock at no greater rate than other money capital in the hands of individual citizens of the states; the real estate according to its value as other real estate is taxed in view of Sections 4252, 4253, Or. L., conforming to Revised Statutes of the United States, Section 5219 (U. S. Comp. Stats., § 9784), so providing for banking property, and Sections 4268, 4269, Or. L., directing the assessors to value real and personal property, including shares of capital stock of national banks, at "their true cash value."

**Taxation—Assessor Presumed to have Followed Statute.**

2.  The assessor is presumed to have followed a statute directing him to assess real property at its true cash value.

**Taxation—Tax-roll Assessment of Bank Real Estate has Force of Judgment.**

3. The assessor, in fixing a valuation and assessing a bank's real estate, acted in a judicial capacity, and the assessment-roll when made up had the effect of a judgment as against the bank unless reviewed or revised in the manner pointed out by law.

**Taxation—"True Cash Value" and "Actual Cash Value" in Statutes Dealing With Taxation of Real Estate Held Synonymous.**

4. Sections 4268, 4269, Or. L., require property to be assessed at its "true cash value." Section 4253 prescribes the method to be pursued by the assessor in arriving at the assessed value of shares of capital bank stock in shareholders' hands, and directs him to determine the "actual cash value" of all real estate owned by the bank and deduct it to get the assessed valuation. *Held*, that "true cash value" and "actual cash value" are synonymous.

**Taxation—Assessor's Method of Assessing Real Estate and Capital Stock of Bank Held Correct—"Actual Cash Value."**

5. Certain real estate belonging to a national bank, and in which a portion of its capital stock was invested, was assessed to the bank as other real estate in the district was assessed, at the same time the shares of stock in the bank were assessed to individual stockholders, and in equalizing the assessment of the shares and in fixing their value the board of county commissioners refused to deduct from the capital of the bank the amount invested in real estate. *Held*, that such action constituted neither excessive nor double taxation, since the language of Section 4253, Or. L., requiring assessment of such real estate according to "actual cash value of all real estate," means assessed value rather than invested values in view of Section 4252 and other sections using similar language.

**Taxation—Statutory Statement of Bank Officers as to Cash Value of Property Held not to Bind Assessor—"Cash Value."**

6. It is the duty of the assessor to determine the actual cash value, both of the real estate and shares of stock of a bank, and his conclusions are not controlled by the book value of either as shown by the records of the bank or the statement of assets and liabilities furnished him by its officers, under Section 4252, Or. L., which is merely intended to aid him.

**Taxation—Conclusions of Assessor as to Value of Shares of National Bank Stock Held Binding on Stockholders and Court.**

7. In the absence of other evidence of the market value of shares of national bank capital stock, the conclusions of the assessor entered upon the assessment-roll are presumed to declare the full actual cash value and are binding upon the shareholders and the court.

**Taxation—Tax Ratio Found by State Tax Commission Held not to Bind Assessor.**

8. The assessor is not bound to apply the percentage ratio of taxation to actual value of property found by the state tax com-

mission, such determination being statistical in character, and Section 4217, Or. L., expressly provides that it shall not operate to change property values.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. James H. Nichols.*

For respondent there was a brief over the name of *Mr. W. S. Levens.*

McCOURT, J.—The Citizens' National Bank of Baker City, Oregon, which will be hereinafter referred to as "the bank," is a national banking corporation.

On September 15, 1922, the bank, representing the shareholders of its capital stock, filed with the county board of equalization of Baker County a verified petition for the reduction of the assessed valuation of its shares of capital stock, as assessed by the assessor of Baker County, and as such valuation appeared on the assessment-roll of Baker County for the year 1922.

A hearing was had before the county board of equalization upon the petition of the bank, after which the board disallowed the petition. Thereafter the bank appealed from the decision of the county board of equalization to the Circuit Court.

Upon a hearing and consideration of the appeal in the Circuit Court, a judgment and decree was entered by that court, which, omitting the introductory recital, is as follows:

" * * the court finding nothing showing that the said capital stock was assessed at more than its true cash value, or that the real estate of said appellant was assessed at less than its true cash value, and the court finding that said property was assessed at its true cash value and that the assessment as finally made fairly and in good faith, it is, considered, ordered and adjudged that the order of said Board of Equalization so appealed from be, and the same hereby is, in all things approved and affirmed."

The bank has appealed to this court from the foregoing judgment and decree.

1. The power of the state to tax national banks is confined to taxation of their shares of capital stock and the real estate owned by them, and that power is subject to the restrictions that taxation of the shares of capital stock shall not be at a greater rate than is assessed upon other money capital in the hands of individual citizens of the states, and that real property shall be taxed according to its value as other real property is taxed: Section 5219, U. S. Rev. Stats.; 6 Fed. Stats. Ann. (2 ed.), 796 (U. S. Comp. Stats., sec. 9784); *Owensboro Nat. Bank* v. *Owensboro,* 173 U. S. 664 (43 L. Ed. 850, 19 Sup. Ct. Rep. 537); *Citizens' Saving Bank* v. *Owensboro,* 173 U. S. 636 (43 L. Ed. 840, 19 Sup. Ct. Rep. 530, 571).

The statutes of this state governing the taxation of the shares of capital stock and the real property of banking corporations, including national banks, were designed to, and do, conform to the requirements above stated, and so far as material to this case, read as follows:

Section 4252. "To aid the assessor in determining the value of such shares of stock, the cashier or other accounting officer of every such bank mentioned in

section 4243 is hereby required to furnish a statement to the assessor of the county where the same is located, between the first day of April and the fifteenth day of May in each year, verified by oath, showing the amount and number of such shares of the capital stock of such bank, the amount of its surplus or reserve funds, and the amount of its undivided profits at the hour of one o'clock A. M. of the first day of March preceding, the actual and cash value of all real estate owned by it in this state, or elsewhere, and the location of the same; also the cash value of the securities of the United States owned by it."

Section 4253. "Real estate owned by such bank and situate in this state shall be assessed and taxed as other real estate is assessed and taxed. The assessor shall determine the amount of the actual cash value of all real estate owned by the bank and shall deduct said amount from the aggregate amount of such capital stock, surplus fund and undivided profits, and the remainder shall be taken as a basis for the valuation of such shares of stock in the hands of the stockholders subject to the provisions of law requiring all property to be assessed and taxed at its full and actual cash value."

The statutes defining the duties of the assessor direct the assessor to value real and personal property, including shares of capital stock of national banks, at their true cash value, and declare—

" * * * True cash value of all property shall be held and taken to mean the amount such property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power and such other factors as may be applicable for determining such value." Sections 4268, 4269, Or. L.; *Ankeny* v. *Blakely,* 44 Or. 79 (74 Pac. 485).

The facts essential to a decision of the questions presented upon this appeal are contained in a stipu-

109 Or.—43

lation, and the writings referred to therein, which stipulation was entered into by the attorneys for the respective parties, and made a part of the record of this proceeding in the Circuit Court.

It appears from the stipulation of facts, that before the assessor made the assessment of the real estate or the shares of the capital stock of the bank, the president of the bank, in response to the requirements of Section 4252, Or. L., furnished to the assessor a statement showing that the total resources of the bank on the first day of March, 1922, were $798,381.46, which resources included real estate in Baker County, Oregon, in which the bank had invested its assets in the amount of $49,400. The statement also showed that on the same date the total liabilities of the bank amounted to $798,381.46, including the liability upon its capital stock in the sum of $100,000, surplus fund in the sum of $20,000 and undivided profits amounting to $7,988.71, or a total for the last three named items of $127,988.71. The true cash value of its real estate was not set forth in the foregoing statement, but instead it was declared therein that the bank had invested its assets in real estate to the amount of $49,400. In assessing the above-mentioned real estate, the assessor of Baker County placed a value thereon of $34,230, and assessed the same against the bank; in determining the value of the shares of the capital stock of the bank for the purposes of assessment and taxation, the assessor deducted the said sum of $34,230, the value placed upon the real estate by him, from the sum of $127,988.71, the aggregate amount of the capital stock, surplus fund and undivided profits of the bank. Taking the remainder, $93,755, as a basis for the valuation of such shares

of stock in the hands of the stockholders, the assessor then assessed the shares of capital stock at the total sum of $70,315, which amounted to 75 per cent of the aggregate amount of the capital stock, surplus fund and undivided profits, after the assessed value of the real estate had been deducted therefrom.

It was stated in the stipulation that the real estate owned by the bank was assessed by the county assessor for the year 1922 in the same manner, and the same value placed thereon, as other property similarly situated in that community was valued and assessed, also that the State Tax Commission of the State of Oregon found that for the year 1922, all property in Baker County was assessed at 76 per cent of its actual value.

The bank offered no objection to, and does not object to, the value placed upon the real estate by the assessor for the purpose of taxing the same against the bank, but accepted that valuation as a proper basis for the payment of taxes thereon by itself; neither does the bank claim that the value placed by the assessor on the shares of its capital stock ($70.31 for each share thereof) is more than the true cash value thereof. The evidence indicates that the assessed value is less than its true cash value at that time.

The difference between the amount the bank claims it has invested in the above-mentioned real estate and the assessed value placed thereon by the assessor is $15,170, and the bank insists that the method of assessment pursued by the assessor produces double taxation to the extent of the sum last mentioned.

The bank contends that in order to avoid such double taxation, the assessor, in arriving at the value to be placed upon the capital stock for purposes of

assessment and taxation, is required to deduct the total amount invested by the bank in real estate from the aggregate amount of the capital stock, surplus fund and undivided profits of the bank; it is also claimed by the bank that the remainder obtained in this way must be further reduced by the application thereto of the percentage ratio of 76 per cent, which it is asserted the State Tax Commission found was the ratio of assessed value to actual value in that county for the year 1922.

The specific claim is that the assessor should have deducted $49,400, the amount invested in real estate, from the sum of $127,988.71, the aggregate amount of the capital stock, surplus fund and undivided profits of the bank, and that the remainder, $78,588.71, should have been multiplied by 76 per cent. The result thus produced, or $59,727.42, the bank claims is the valuation at which the assessor was required to assess the capital stock of the bank.

The bank concedes that the real estate owned by it was assessed by the assessor for the year 1922 in the same manner, and the same value placed thereon, as other like property similarly situated in that community was valued and assessed. As to the real estate, then, the assessor observed the express requirements of both the federal and state statutes.

2, 3. The state statute directed the assessor to assess the real property at its true cash value. He is presumed to have observed that requirement. The assessor in fixing a valuation upon the real estate owned by the bank and assessing the same, acted in a judicial capacity, and the assessment-roll when made up by the assessor, as to the valuation and assessment evidenced thereby, had the effect of a judgment as against the bank, unless reviewed or

revised in the manner pointed out by law: *Oregon & Wash. Mfg. Sav. Bank* v. *Jordan,* 16 Or. 113, 116 (17 Pac. 621); *Steel* v. *Fell,* 29 Or. 272, 276 (45 Pac. 794); *Oregon Coal Co.* v. *Coos County,* 30 Or. 308, 310 (47 Pac. 851); *Oregon & C. R. R. Co.* v. *Jackson County,* 38 Or. 589, 602 (64 Pac. 307, 65 Pac. 369).

The valuation of the real estate on the assessment-roll is not under review in this proceeding, and it was not assailed in any other proceeding, it is conclusive upon the bank. Whether it is equally binding upon the shareholders, in connection with the valuation of the shares of capital stock for the purposes of assessment and taxation, we need not decide.

4. Our statutes (§§ 4268, 4269, Or. L.), require property to be assessed at its true cash value. Section 4253, prescribing the method to be pursued by the assessor in arriving at the valuation of shares of capital stock of a corporation bank in the hands of the shareholders, directs that "the assessor shall determine the amount of the actual cash value of all real estate owned by the bank and shall deduct said amount, etc." The two expressions, "true cash value," and "actual cash value," as used in the statutes above designated, mean the same thing: *Ankeny* v. *Blakely,* 44 Or. 79 (74 Pac. 485).

In the case of the *Appeal of Dennis et al.,* 72 Conn. 369 (44 Atl. 545), the court construed tax statutes of that state similar to those under consideration. The Connecticut statutes provided in effect that the shares of stock of any bank should be assessed to the owner at their market value, and in arriving at the valuation of such shares of stock, so much of the capital of any such bank as was invested in real estate on which it is assessed and pays a tax should be deducted from the market value of its

stock. The Connecticut statute was more susceptible than the Oregon statutes to the construction for which the bank in the instant case contends, but the Supreme Court of Connecticut said:

"Our tax laws require property to be assessed at its actual value, and a statute referring to value of land in connection with taxation, cannot be construed as meaning a value in excess of the assessed value, unless the language used demands such construction. The amount of $175,000 is that portion of the capital of the trust company on which it is assessed and pays a tax; if an additional portion of its capital has in fact been invested in land, the company pays no tax on such additional portion, and it is not within the operation of the statute. The court below did not err in holding that it was the assessed value of the real estate which the secretary was required to deduct from the value of the stock."

In the case of *Valley Investment Co.* v. *Board,* 152 Iowa, 84 (131 N. W. 669), the Supreme Court of Iowa placed a construction upon analogous statutes of that state like that adopted by the Connecticut court.

5. The language of Section 4253, Or. L., when considered in relation to other provisions of the statutes relating to taxation, clearly indicates that the words "actual cash value of all real estate," as used therein, are equivalent to, and mean, assessed value of the real estate, and not the amount invested therein. The decisions of the courts of last resort of Connecticut and Iowa, above cited, support that construction.

It follows that the action of the assessor in deducting the assessed value of the real estate owned by the bank from the aggregate amount of the capital stock, surplus fund and undivided profits conformed to the statute.

The bank does not complain that the assessment caused its shares of stock to be taxed at a greater rate than was assessed upon other money capital in the hands of individual citizens in the county or elsewhere in the state.

Counsel for the bank say, that inasmuch as the bank has invested $49,400 of its capital stock in real estate, and the assessor has deducted only $34,230, the assessed value of the real estate, the difference, or $15,170, enters into, and is a part of, the value of the shares of capital stock assessed by the assessor upon that stock and to the extent of the sum last mentioned, constitutes double taxation.

The contention of counsel based upon the facts above stated, leaves out of consideration the additional fact that the result obtained by the assessor after deducting the assessed value of the real estate, was reduced 25 per cent, or $23,440, considerably more than the amount of the value which it is claimed was doubly taxed.

Moreover, it is settled beyond dispute that the method of assessment and taxation provided by the statute, and followed by the assessor in respect to the real estate and the shares of capital stock under consideration, does not result in double taxation: *Commercial Nat. Bank* v. *Chambers,* 182 U. S. 556 (45 L. Ed. 1227, 21 Sup. Ct. Rep. 863, see, also, Rose's U. S. Notes); *First Nat. Bank* v. *Moon,* 102 Kan. 334 (170 Pac. 33, L. R. A. 1918C, 986); *In re First Nat. Bank,* 25 N. D. 679 (146 N. W. 1064, L. R. A. 1915C, 386).

The result obtained by deducting the value of the real estate is not the value at which the shares of stock are to be assessed; on the contrary, the statute directs that such result, which excludes the value

of the real estate, shall be taken not as the valuation of, but as a basis for the valuation of, the shares of stock subject to the provisions of law requiring all property to be assessed and taxed at its full and actual cash value. The method thus provided was intended to, and does, prevent the real estate from being subjected to a double tax.

6. It is the duty of the assessor to determine the actual cash value, both of the real estate and the shares of stock, and his conclusions in respect thereto are not controlled by the book value of either, as shown by the records of the bank or any statements furnished him by its officers: *Ankeny* v. *Blakely, supra.*

The statutory requirement that the accounting officers of the bank shall furnish the assessor with a statement of its assets and liabilities is designed to aid the assessor in the performance of his duty, and the book value of the shares of stock contained in such statement, or the value of any items of property shown thereby, are but factors to be considered by the assessor, together with the prospects of the bank as a going concern, its property as a whole, the earning power thereof, and the evidence of the price obtained upon sales of its shares, in determining the amount the shares of stock would sell for at a voluntary sale made in the ordinary course of business: *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313, 315 (29 N. E. 532), cited in *Ankeny* v. *Blakely, supra.*

In the Massachusetts case last cited, the book value of the shares of capital stock was $126, which included real estate to the amount of $6 for each share of stock. The real estate was assessed against the bank. The shares of stock were assessed against

the shareholders owning the same, at the rate of $120 per share. Due to a loss of confidence in the management of the bank, it had for some years paid low dividends, and consequently the market value of its shares of stock at the time the assessment was made, was $102 per share. The bank claimed that the tax upon the stock should be abated to the extent that it was calculated upon the excess above the market value of the stock, and filed a petition for such abatement. The court decided that the shares should have been assessed at their actual or market value, instead of at their book value, and allowed the abatement. Mr. Justice HOLMES, now and for many years a justice of the Supreme Court of the United States, said:

"The cash value of an article is the amount of cash for which it will exchange in fact. That amount depends on the opinion of the public of possible buyers, or of that part of it which will pay the most. If in their opinion the stock is worth only $102 per share—if that is all that the stock will sell for— it is vain to show that the net value of the property of the corporation, that is to say, the opinion of the public about a chief component element of the value of the stock, if uncontrolled, logically leads to a different value for the stock. * * As a rule, the fair cash value of shares having a market is best ascertained by finding the price at which they sell in the market."

The opinion of the court in the Massachusetts case ably refutes most of the arguments advanced by counsel in the instant case. It is the purpose of the statute to prevent discrimination and inequality between the assessment of the shares of the capital stock of national banks and other money capital in the state and to avoid taxing the property twice

that enters into the value of such shares. Accordingly, assessors are required to assess the shares of capital stock at their actual value, without regard to the value of the real estate, which is required to be assessed separately against the bank: *People v. Commissioners,* 69 N. Y. 91.

7. There is no claim of discrimination in this case, and it has been shown that the claim of double taxation is not sustained. In arriving at the actual cash value of the shares of stock, the assessor deducted the assessed value of the real estate from the total book value of all the shares of stock and reduced the remainder thus obtained by 25 per cent, and entered the result on the assessment-roll. In the absence of other evidence of the market value of the shares of capital stock, the conclusions of the assessor entered upon the assessment-roll, are presumed to declare the full actual cash value of the shares of stock and are binding upon the shareholders and upon this court. The assessor followed the directions of the statute, and no showing has been made in this case sufficient to authorize the court to disturb the official record made by him, which record, upon well-settled principles, has the conclusive effect of a judgment.

8. The further contention of the counsel for the bank, that the assessor was bound to apply to any determination of value made by him, the percentage (76 per cent) ratio that assessed value in Baker County bore to actual value for the year 1922, as found by the State Tax Commission, is without merit. The determination of the State Tax Commission referred to is largely statistical in character; it was reached long after the assessment-rolls of Baker County were completed and equalized and for the pur-

pose of equalizing assessed values as between the several counties of the state as a basis for raising state revenues; and the statute expressly provides that such determination shall not operate to change the values of property as shown upon the assessment-rolls in the several counties: Section 4217, Or. L.

The judgment and decree of the Circuit Court is affirmed.                                                    AFFIRMED.

BURNETT, J., not sitting.

Mr. Justice COSHOW, having been appointed after this case was heard, took no part in the decision.