Argued February 15, reversed September 6, 1961 ·

# WEST HOUSE, INC. v. STATE TAX COMMISSION
## SUPERIOR GARMENT COMPANY, INC. v. STATE TAX COMMISSION
### 364 P. 2d 598

*Eugene E. Feltz,* Portland, argued the cause for appellants. With him on the brief were Jacob, Jones & Brown, Portland.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, and Walter J. Apley, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

O'CONNELL, J.

This is a consolidated appeal from the decrees of the circuit court for Multnomah county sustaining the omitted property assessments levied against each of the petitioners. The cases came before the circuit court upon a petition for review of the orders of the State Tax Commission upholding an omitted property assessment against the petitioner West House, Inc. for the tax years 1954-1955 and 1955-1956, and against the petitioner Superior Garment Company, Inc. for the tax year 1955-1956.

Since the legal question presented in both cases is the same we shall refer only to the specific facts involving the assessment made upon West House, Inc.

Petitioner filed its personal property tax return for the tax years 1954-1955 and 1955-1956 with the assessor purporting to set forth the true cash value of its inventory as required by law. The inventory consisted of ready-to-wear clothing. The assessor assessed the inventory on the basis of the value reported. This valuation was placed on the tax rolls for the years in question. The assessment of the petitioner's inventories, along with the property of other taxpayers on the tax roll, was examined, corrected and equalized by the County Board of Equalization. Thereafter the assessor and the sheriff examined the petitioner's books to determine the value of its inventory as of January 1, 1954 and January 1, 1955. On October 15, 1956 petitioner was notified that the county would add to the tax roll certain alleged "assessed value of omitted inventory." The value of omitted inventory as found by the assessor was then placed on the current tax roll as an "omitted merchandise assessment." The petitioner then appealed to the State Tax Commission and the commission sustained the assessment of the omitted property.

The omitted property assessment was based solely upon the book value of the petitioner's inventory as of November 30th of each year after an adjustment to the following January 1st. Because the petitioner valued its inventory at cost[①] it contended that book value did not represent true cash value, arguing that the obsolescence of a substantial part of its inventory did not appear on its books. The defendant commission, however, sustained the assessment on the ground that Article 8205.2 B of the regulations of the State Tax Commission, to which more specific reference

[①] Regulation of the State Tax Commission, Art. 8205.2 B provides that inventory may be valued at cost or the lower of cost or market. That method of valuation selected, however, must be applied consistently.

will later be made, makes the book value of inventories the equivalent of true cash value for assessment purposes.

ORS 308.232 provides that all property shall be assessed at its true cash value. True cash value was defined by the then applicable statute, ORS 308.205 (1), as follows:[2]

"308.205 (1) True cash value of all property, real and personal, means the amount the property would sell for at a voluntary sale made in the ordinary course of business, under normal conditions, in accordance with rules and regulations promulgated by the State Tax Commission. No deduction of indebtedness from assessments or taxation shall be allowed. This subsection is not effective after subsection (2) of this section becomes effective."

The defendant commission asserts that by the force of its regulation, Article 8205.2 B, the book value of petitioner's inventory represents the true cash value of that inventory for assessment purposes.[3] It is pointed out by defendant that under the regulation petitioner has the right to adjust its books to reflect the obsolescence of its inventory.

---

[2] Subsection 2 referred to in the above statute reads as follows: "(2) True cash value of all property, real and personal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the State Tax Commission. With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property. This subsection shall first become effective on January 1, 1961."

[3] "Art. 8205.2 Personal Property Valuation for Tax Purposes.
"B. True cash value of inventories except for specific categories, the true cash value of which shall be determined by the State Tax Commission as provided in Article 8205.2C, shall be determined in accordance with the following:
"These inventories shall be returned for personal property tax purposes at that value shown on the financial records of account including the financial statements and income and excise tax returns, where the full taxable inventory is accounted for and where such value represents the use of those methods and procedures authorized below:

In two recent cases the State Tax Commission has similarly asserted that book value may be regarded as true cash value for the purpose of an omitted property assessment. In *Case v. Chambers et al*, 210 Or 680, 708, 314 P2d 256 (1957) the court said:

"We are unable to say, as a matter of law, with what rate of frequency book value might happen to coincide with true cash value. But we are convinced that a manufacturer's factory cost, when applied to an entire inventory, some items of which have been

"(1) The bases of valuing these inventories are *cost*, or the *lower of cost* or *market*. Such bases shall be applied consistently to the entire inventory.

"(2) *Determination of Cost*—The methods that may be utilized in determining cost of assessable inventories are, in general, those used in good accounting practice, such as specific cost; average cost; first in, first out; and retail method—being restricted to merchants or dealers.

"Note: See sub-section (5) for unauthorized methods.

"(3) *Determination of Market*

"(a) *Purchased Merchandise or Materials*—current bid price prevailing at date of inventory for the particular merchandise in the quantity in which usually purchased by the taxpayer and including acquisition costs.

"(b) *Manufactured Goods and Goods in Process*—market prices for raw material, prevailing labor rates and overhead charges adjusted to current costs.

"(4) *Goods Unsalable at Normal Prices or Unusable in the Normal Way*—At the date of inventory such goods, because of damage, imperfection, shop wear, changes of styles, odd or broken lots or other similar causes including secondhand goods taken in exchange, may be valued at bona fide selling prices less direct cost of disposition. Bona fide selling prices mean actually offering for sale these goods during a period ending not later than 30 days after inventory date. The burden of proof rests upon the taxpayer to show that such exceptional goods, as are valued at such basis, come within the classification indicated above, and that the taxpayer must maintain such supporting records and data relative to these goods as will enable a verification of the inventory to be made. This procedure may be utilized under either method of valuing inventories, i.e., cost or lower of cost or market.

"(5) The following methods may not be utilized in determining value of assessable inventories:

"(a) Deduction of a reserve which represents fluctuation in market prices from a normal or basis inventory investment.

"(b) An original base stock policy.

"(c) Last in, first out method.

"(d) Deducting an estimated amount of depreciation.

"(e) Taking work in process or other parts of the inventory, at a nominal price or at less than its proper value.

"(6) The inventory as recorded on the records of account shall be supported by a physical count as of the end of the accounting period, or where perpetual inventories are properly maintained, periodic physical counts may be made at dates not coincident to the balance sheet or accounting period date where the inventory records are adjusted to agree with the actual count. The detail records of the physical count and applicable invoices used in pricing shall be preserved for examination.

"C. The True Cash Value of Specific Categories of Inventories. The

unsalable for many years, does not necessarily re-flect true cash value. We agree that such cost may be evidence of value, but we cannot approve it as the sole measure of value in the face of substantial evidence of obsolescence."

In *M & M Woodworking Co. v. Tax Com.*, 217 Or 161, 192, 314 P2d 272, 274, 317 P2d 920, 924, 339 P2d 718 (1959) it was said, "We cannot accept the thesis advanced by the commission that book value is, as a matter of law, the equivalent of true cash value as defined by the statute we have quoted."

In the present case the commission contends that the foregoing cases are not controlling because they were decided prior to the adoption of Article 8205.2 of the commission's regulations authorizing the use of book value as the equivalent of true cash value for the purpose of assessing certain inventories.

The commission asserts that through the exercise of the power delegated to it by the enactment of ORS 308.205 the regulation became a legislative rule which must be given judicial recognition unless it can be said that the regulation is unreasonable.④

When the commission relies upon ORS 308.205 as the source of its authority to adopt and enforce the regulation it, in effect, concedes that in the absence of

---

Commission shall determine the true cash value of the following specific categories of inventories as of January 1 and shall make such values available to the assessors not later than February 1. The assessor shall use these values in determining the assessments for that taxing year.

"1. Livestock
"2. Logs
"3. Petroleum products in the hands of refiners"

This regulation first became effective January 5, 1954. Subsection B was extensively rewritten in 1955 to become effective January 1, 1956. Changes after this date have been minor. CCH State Tax Rep., Or., Para. 20-304a.

④ That part of ORS 308.205 (1) giving the commission the power to make rules and regulations with respect to assessments was added by amendment in 1953 (Oregon Laws 1953, ch 701, § 2). The J. I. Case case and the M & M Woodworking case, supra, involved assessments for years prior to the amendment and the regulation.

the statute and the regulation the cases of *Case v. Chambers et al,* supra, and *M & M Woodworking Co. v. Tax Com.,* supra, would be controlling. Without the statute, then, the defendant commission could not have made book value (as adjusted for obsolescence by the taxpayer in conformity with the regulation) the conclusive test of true cash value. Accepting this concession, it is important to determine whether the statute extended the commission's regulatory power in assessment procedures and if so, whether such additional delegation of authority effected a change in the rule of the J. I. Case and M & M Woodworking cases, supra, which prohibited the tax collecting agencies from using book value as conclusive evidence of true cash value.

Whether the statute can be regarded as implying an authorization for a change in the rule recognized in the latter cases will depend, in part at least, upon the rationale which supports that rule. The rationale is most clearly stated in *Case v. Chambers et al,* supra. In that case the taxpayer, as in the case at bar, reported the value of its inventory as carried on its books but deducted a certain percentage for obsolescence. In making a subsequent assessment for alleged omitted property (i.e., for failure to report the entire value of the inventory) the county and the commission used the book value of the inventory without deduction for obsolescence. The original assessment had been based upon the taxpayer's return which reported the value of the inventory less a certain percentage reflecting obsolescence. It was held that the taxpayer was entitled to a presumption in favor of the validity of the original assessment and that the commission had the burden of proving that the original assessment was erroneous. The reasoning which

supports this conclusion is found in the following excerpts from the opinion:

"While we recognize the practical convenience of the assessor's relying upon the taxpayer's return in the first instance, the statutes mentioned at the beginning of this opinion clearly place upon the assessor an independent duty of determining for himself the true cash value of the taxable property in his jurisdiction. The taxpayer's return is not controlling upon him in any respect, and in the absence of a return he must list and evaluate the property from the best information obtainable from other sources, for which duty he is given ample powers of discovery. Therefore, we cannot assume, as the commission asserts, that 'the assessor accepts the reported value without in fact finding the actual true cash value.' On the contrary, we must presume that the assessment roll represents an actual determination of value by the assessor, and that if he adopts the values shown by the taxpayer's return, it is because those values also reflect the independent judgment of the assessor. Therefore, we think that the presumption in support of the assessment roll must operate in favor of the taxpayer, as well as against him.
"* * * * *

"As to undervalued property, * * * the right of the officer to add the excess to the roll depends upon the fact of undervaluation. Such an inquiry puts the accuracy of the roll necessarily in issue, and the result is, in effect, the modification of a judgment after its entry. For this purpose the word 'discover' in the 1951 amendment must mean, not mere grounds to believe, but the actual determination that there has been an undervaluation, after notice and hearing. As to this, the taxing authorities have the affirmative of the issue, and the presumption in favor of the original assessment puts the burden on the county to show that the original assessment was incorrect, and that the listed property has been undervalued. See In Re

Daniel's Omitted Property, 108 Okla 195, 235 P 543; Commonwealth v. Kentucky Heating Co., 180 Ky 607, 203 SW 538; White R. Lbr. Co. v. State, 175 Ark 956, 2 SW2d 25 (Affirmed 279 US 692, 73 L ed 903, 49 S Ct 457)." 210 Or at pp. 705-707.

It is to be noted that, although the J. I. Case case was decided after the assessment in the case at bar, the principle applied in that case had been established in prior cases which antedated the assessment with which we are concerned.[9] The question is, then, whether the 1953 amendment of ORS 308.205 (1) is to be construed as a legislative grant to the commission of the authority to repudiate the principle to which we have referred.

The 1953 amendment of ORS 308.205 (1) was the addition of the language "in accordance with rules and regulations promulgated by the State Tax Commission." It is not clear from the statute whether the power to make rules and regulations was intended to be exercised in connection with the ascertainment of the true cash value of property or merely in connection with establishing the factors to be considered in determining what are "normal conditions." There is evidence in the history of the legislation supporting the latter interpretation. From the records of the State Archivist, it appears that the Committee on Taxation which submitted the bill creating this amendment had before it a draft of an amendment which read in part as follows:

"(3) True cash value of all property, whether real or personal, shall be held and taken to mean

---

[9] Many earlier Oregon cases have held that the original assessment is presumed to be correct. Appeal of Kliks, 158 Or 669, 76 P2d 974 (1938); Citizens' Nat. Bk. v. Board of Equalization, 109 Or 669, 222 P 341 (1924); Douglas Land Co. v. Clatsop County, 87 Or 462, 169 P 790 (1918); Weyerhaeuser Land Co. v. Board, Etc., 85 Or 434, 165 P 1164 (1917). Case v. Chambers et al, 210 Or 680, 314 P2d 256 (1957), held that this presumption applied equally to the tax commission and the taxpayer.

the amount such property would sell for at a voluntary sale made in the ordinary course of business, ~~[taking into consideration its earning power and usefulness]~~ under normal conditions. *Normal conditions for each class of property shall be taken to mean those conditions which exist when the economic forces of supply and demand are in balance. Standards for normal conditions shall be determined by rules and regulations as promulgated by the State Tax Commission. No deduction of indebtedness from assessments or taxation shall be allowed in any case.*

"~~[(3) True cash value shall be taken to mean market value, which is defined as the amount of money or money's worth for which property may be exchanged within a reasonable period of time under conditions in which both parties to the exchange are able, willing, and reasonably well informed. Such value shall be determined uniformly in all counties in accordance with rules and regulations promulgated by the State Tax Commission. No deduction of indebtedness from assessments or taxation shall be allowed in any case.]~~"

The italicized portions of this draft were to be added, the bracketed portions were to be deleted. This fact would suggest that the amendment of ORS 308.205 (1) granting to the commission authority to make rules and regulations was intended to relate only to establishing standards for "normal conditions," the ambiguity to which we have referred arising out of the condensation of the bill.[6]

At the time the amendment was adopted the State Tax Commission had already been invested with the authority to make rules and regulations to carry out the purposes for which it was created.[7] The existing

---

[6] The 1955 amendment of ORS 308.205 (Oregon Laws 1955, ch 691) clearly relates the power to make rules and regulations to the procedures in determining true cash value.

[7] "306.100 Power to make rules and regulations and prescribe forms. The State Tax Commission shall:

statute was broad enough in scope to include the power to make regulations relating to procedures in assessment, including regulations dealing with the determination of the true cash value of property subject to assessment. So construed, it would not have been necessary for the legislature to include in the 1955 amendment of ORS 308.205 the specific power to make rules and regulations to establish methods and procedures for the determination of true cash value. The fact that it was not necessary to amend ORS 308.205 (1) for the purpose of investing the commission with authority to make rules and regulations relating to general procedures in the assessment process lends support to the inference that the amendment was intended to grant to the commission authority (or remove any doubt as to its authority) to establish rules and regulations in connection with fixing standards in arriving at the test for "normal conditions."

■ Even assuming, as the defendant here contends, that the 1953 amendment of ORS 308.205 was necessary to grant the power to make rules and regulations in establishing the procedures for the determination of true cash value, there is still the question of whether the delegation of such authority was intended to vest in the commission and the county the means of circumventing the principle, alluded to above, under which the initial assessment is presumed to be correct and binding upon the tax collecting agencies unless they can prove that the value reported is less than the true cash value of the subject property.

We are of the opinion that ORS 308.205 (1) is not

---

"(1) Make such rules and regulations it deems proper to regulate its own procedure and to effectually carry out the purposes for which it is constituted.

"(2) Prescribe all forms of books and blanks used in the assessment and collection of taxes not otherwise prescribed by law and change the forms of blanks and books prescribed by law in case change is necessary."

178

subject to the construction placed upon it by the defendant commission. In view of the fact that this specific, and rather important, principle of taxation procedure existed at the time of the amendment it seems more reasonable to say that had the legislature intended to abrogate it and shift the burden of proof from the commission to the taxpayer the statute would have dealt with the change specifically rather than inferentially through a grant of authority to make rules and regulations.

The rule giving presumptive validity to the original assessment once it is put upon the tax rolls is based upon sound practical considerations. Some point must be set as a relatively final stage in the tax collection process so that the taxpayer can, with some degree of certainty, make the necessary calculations as to the cost of doing business. If the assessor has placed upon the tax rolls a valuation, whether arrived at through an independent appraisal of the taxpayer's property or simply taken from the taxpayer's return, that valuation should stand unless the commission can show that it does not represent the true cash value of the property.

■ The rule we adopt here does not prevent the assessor or the commission from adopting procedures in the initial assessment which will carry out the commission's policy of equating book value with true cash value. In making the original assessment, the assessor may, if he chooses, insist upon compliance with Article 8205.2 and reject the valuation submitted by the taxpayer in his return unless the book value has been adjusted in accordance with the regulation. We are of the opinion that it is neither unfair nor beyond the power of the commission to adopt and enforce a regulation such as Article 8205.2 in the original assessment

stage. The taxpayer has the opportunity under the regulation to adjust his book value to reflect obsolescence. We do not think that it is unreasonable to require the taxpayer to comply with section B(4) of Article 8205.2 of the commission's regulations in making his return. But if the assessor or the commission wishes to require this method of reporting they must do so when the return is made, not after the assessment is made and placed upon the tax roll.

 The defendant commission argues that, even if we should hold the regulation inoperative, petitioner has not produced sufficient evidence to support the value reported on its return, there being no evidence of substantial obsolescence. We believe that there was evidence of substantial obsolescence. However, it is not necessary to dispose of defendant's contention on this ground. We have held that the defendant has the burden of proving that the original assessment was not based upon the true cash value of the reported property. As taught in *Oregon Worsted Co. v. State Tax Com.*, 217 Or 104, 317 P2d 924, 342 P2d 108 (1959), the burden of proof does not shift to the taxpayer until the commission has established "that the total original assessment has been materially undervalued." In the case at bar the commission did not prove such material undervaluation.

The decree of the lower court is reversed.