# PORTLAND CANNING COMPANY v. STATE TAX COMMISSION

Carrell F. Bradley, Hillsboro, tried the cause and filed briefs for plaintiff.

A. W. Pedersen, Assistant Attorney General, Salem, tried the cause and filed a brief for defendant.

Decision for plaintiff rendered June 29, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside State Tax Commission Opinion and Order No. VL 62-212, which instructed the Assessor of Washington County to reinstate cer-

tain values for plaintiff's properties on the assessment rolls. Earlier, at the State Tax Commission's direction, the assessor placed these values on the assessment roll, and the Washington County Board of Equalization reduced them.

An Oregon corporation, Portland Canning Company owns and operates two food canning plants in Washington County, one at Forest Grove and the other at Sherwood.

Beginning in the 1961-62 tax year the Oregon State Tax Commission assumed the responsibility of valuing plaintiff's plants. Using the values determined by the commission in that year, the Washington County Assessor assessed the Sherwood plant at a true cash value of $472,190 and the Forest Grove plant at a true cash value of $188,450. Plaintiff petitioned the Board of Equalization of Washington County for a reduction in these values. It alleged that the true cash value of the Sherwood plant did not exceed $200,000 and the true cash value of the Forest Grove plant did not exceed $100,000. On July 3, 1962, after a hearing, in which the defendant participated, the Washington County Board of Equalization found the true cash value of the Sherwood plant to be $352,540 and the true cash value of the Forest Grove plant to be $152,130. Neither plaintiff nor the Washington County Assessor appealed the board's decision. On or before November 15, 1963, plaintiff paid in full its tax computed on the value determined by the board.

By letter dated August 15, 1962, the board of equalization advised the State Tax Commission of its action in reducing the true cash value of the plants. On October 25, 1962, the commission met with the three members of the Washington County Board of Equalization, the supervisor of industrial appraisals

for the Washington County Assessor's office, the director and assistant director of its own valuation division, and two assistant attorneys general to discuss the reduction. Plaintiff knew nothing of this meeting. On December 27, 1962, defendant rendered its supervisory order which directed the Assessor of Washington County to reinstate the original values found by the commission's appraiser, and to enter them on the assessment rolls.

In appealing from defendant's supervisory order, plaintiff first contends that defendant denied plaintiff the due process of law when it reversed the board of equalization without providing a hearing in which plaintiff could participate and without notice to plaintiff that defendant was going to undertake such action.

When the State Tax Commission exercises its supervisory powers over the assessed value of one taxpayer's property, it is functioning in a quasi-judicial capacity. Compare, *Londoner v. Denver*, 210 US 373 (1908) with *Bi-Metallic Invest. Co. v. State Board of Equalization*, 239 US 441 (1915). Due process requires that a person have an opportunity to know of any governmental action affecting his rights or interests and to appear at a hearing to meet unfavorable evidence. Therefore, due process would require that an assessment could not be increased by a reviewing authority unless the taxpayer had notice and an opportunity to be heard. *Londoner v. Denver, supra.*

Such denial of due process can be cured by a *de novo* judicial review of the administrative action. See *Mallatt v. Luihn*, 206 Or 678, 294 P2d 871 (1956). In a leading United States Supreme Court case on this subject, the court stated, "It is enough that all avail-

able defenses may be presented to a competent tribunal before exaction of the tax and before the command of the state to pay it becomes final and irrevocable." *Nickey v. Mississippi*, 292 US 393, 396, 78 L ed 1323, 54 S Ct 743 (1934). Plaintiff is now availing itself of the right to present all available defenses in a *de novo* hearing in this court. Therefore, any denial of due process by denial of an administrative hearing has been cured.

■■ Though *de novo* judicial review can cure a denial of due process, the denial of an administrative hearing is neither sound nor desirable in some cases. This is not true in the instant case. In cases where the State Tax Commission appraises property for the assessor, a tax commission hearing after the county board of equalization has reduced the commission value would amount to a virtual nullity. The tax commission has already determined the value of the property in one capacity. There is no reason to believe that it would change its mind when acting in another capacity. Requiring the taxpayer to go to a hearing when the commission is actually reviewing its own determination of value would generally require the taxpayer to do a useless act and incur probably useless expense. Since the taxpayer can obtain *de novo* judicial review in this court of any tax commission supervisory order which reinstates a prior commission determination, there is no reason to require the taxpayer to go through a commission hearing to get to this court.

■ In this court, plaintiff has argued for the true cash value set by the board of equalization, while defendant has sought to sustain the value placed on the property under its direction. Since the taxpayer is seeking the action of the court in aid of its contention,

it has the burden of proof. See ORS 41.210 and *Strawn v. Commission,* 1 OTR 98, 149-155 (1962).

■ Plaintiff contends that it should benefit from the court created, substantive presumption of assessment validity. In the normal case, the county assessor is an independent taxing official whose assessment is judicial in nature. The presumption attaches to the assessor's assessment. Even when the assessor's determination is modified on appeal, after a commission hearing, the presumption continues to attach to the assessor's finding upon judicial review of the commission's order. See *Strawn v. Commission, supra* at 131 and 132. The rationale of this rule is clear:

> "Some point must be set as a relatively final stage in the tax collection process so that the taxpayer can, with some degree of certainty, make the necessary calculations as to the cost of doing business." Mr. Justice O'CONNELL in *West House, Inc. v. State Tax Commission,* 228 Or 167, 178, 364 P2d 598 (1961).

■ But this is not the normal case. In this case, no one appealed the ruling of the board of equalization. The commission acted in pursuance of its supervisory powers. In this type of case the presumption of assessment validity should attach to the value finally determined in the assessment review process and from which no appeal was taken. Both the taxpayer and the assessor had a right to appeal from the reduction in value set by the board of equalization. The State Tax Commission could have ordered the assessor to appeal. It did not so order. Therefore when the time for appeal from the board's ruling expired, the taxpayer was entitled to rely on the reduction in value. This conclusion is in accord with the rationale which underlies the existence of the presumption. It affords

a taxpayer some degree of certainty because it gives presumptive certainty to an order which is not appealed.

■ The next issue presented to the court is the true cash value of plaintiff's canneries in Washington County. In appraising the aforementioned properties the appraiser for the State Tax Commission used the estimated replacement-cost-less-depreciation approach. The appraiser made no effort to determine the market value of the equipment because he assumed that no market existed for the equipment and that therefore he could determine the value to the owner. It is the opinion of this court that the appraiser, and thereby the commission, erred in refusing to use the market data approach.

■ By its regulation Art. 8205.1 the State Tax Commission requires that market value be used if market data is available, and that it is only when sales of similar property are infrequent or lacking that market value should be construed as value to the owner or that amount of money that would justly compensate the owner for the loss thereof. This court has already defined the term "market." *Strawn v. Commission,* 1 OTR 98, 167, 168 (1962).

"* * * for a market to exist from which market value of personal property can be determined, it appears that the same kind of personal property must change hands freely and openly in the ordinary course of business so regularly, to so great an extent, and in so many instances that a market price, a recognized value, for it is created or fixed. When sales are lacking or infrequent or not in the ordinary course of business, a market for purposes of market value is not established. * * *"

The equipment involved in the appraisal was read-

ily available on the open market. Acknowledged experts in the canning equipment field testified that the equipment was available on the open market and that there was an established market price for most of the equipment. They testified that the price of any individual piece of equipment could be obtained in this market.

The defendant emphasizes that individual pieces of equipment would have to be inspected before the owner of a cannery would buy them. By this reasoning, since any used car buyer would expect to inspect the car before its purchase, there is no market for used cars. This objection proves too much.

In addition to oral testimony regarding a market, the plaintiff introduced several used equipment lists which are available to the cannery trade. These lists contained no prices for used equipment, but the testimony proved that the cost of used equipment was readily available. Defendant argues that since the prices are not published there is no market price. The definition of a market requires that a market price or a definite value for the property be fixed. The definition does not require that this market price be published. The price need only be readily ascertainable to those who would deal in the market.

Because there is a market for cannery equipment, the commission erred in failing to consider market data and to seek market value.

The presumption of correctness lies with the value found by the Washington County Board of Equalization. This presumption in addition to the other evidence adduced by plaintiff establishes plaintiff's case by a preponderance of the evidence.

Plaintiff shall prepare a decree in accordance with

Rule 38, setting defendant's order aside, reinstating the values determined by the Washington County Board of Equalization, directing the Assessor and Sheriff of Washington County to correct the assessment and tax rolls in accordance therewith, and allowing plaintiff its costs and disbursements herein.*

---

* Foregoing case affirmed by Oregon Supreme Court at 80 Or Adv Sh 939, 404 P2d 236.