## LA POINTE'S, INC. *v.* DEPT. OF REVENUE

Leo S. Meysing, Meysing & Braun, Portland, represented plaintiff.

Richard A. Uffelman, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered September 7, 1971.

CARLISLE B. ROBERTS, Judge.

Appeals from three orders of the Department of Revenue were consolidated for trial in the Tax Court. Tax Court No. 540 is an appeal from the Department of Revenue's Order No. VL 70-211 (Marion County); Tax Court No. 547 appeals Order No. VL 70-335 (Klamath County); and Tax Court No. 548 appeals Order No. VL 70-305 (Jackson County). In each suit the question is the same: Did the plaintiff properly re-

port to the respective counties, for personal property tax purposes, the true cash value of its inventory as of January 1, 1969?

The plaintiff, La Pointe's, Inc., an Oregon corporation, operates three separate women's ready-to-wear retail outlets in Klamath, Jackson and Marion Counties in the State of Oregon, limiting its operations in each store to the sale of fashion merchandise. The annual business cycle of the plaintiff contemplates the retail sale of women's fashion items, oriented to the four basic seasons (spring, summer, fall and winter). In addition, plaintiff stocks for sale merchandise specifically oriented to the Christmas holiday season. Sixteen percent or more of total annual sales occur during the month of December. The holiday sales volume of regularly priced merchandise declines sharply on or before December 24 and continues to drop sharply on and after such date through the end of the calendar year. At the end of the calendar year, plaintiff has on hand a residual merchandise inventory consisting of fashion women's wear in broken lots of odd sizes, shopworn and passe. Sales efforts of plaintiff following Christmas in 1968 and throughout the months of January and February of 1969 were substantially devoted to the disposition of such old merchandise in order to minimize loss and to prepare for the spring season. Sales receipts of plaintiff during January 1969 amounted to only 7.2 percent of the gross sales for the fiscal year ending January 31, 1969.

Plaintiff follows a "cost method" of inventory control; i.e., once it accepts delivery of an item of inventory, the actual invoice cost thereof is entered in the stock control records and such historical cost is

maintained unchanged until the property is disposed of, either in the ordinary course of business or to liquidators. Plaintiff does not utilize the "retail method" of inventory control, which method maintains the book value of inventory at a predetermined percentage of retail sales price, requiring constant adjustment of book values as shelf or tag prices are reduced. See 4 CCH 1971 Stand Fed Tax Rep, ¶ 2949.

The parties stipulated that on January 1, 1969, plaintiff had on hand at its three retail outlets merchandise inventory which, as reflected on its inventory control records, had an original historical cost of $230,249.62. Such cost equals the original invoice cost of merchandise purchased during that year and previous years as reflected on the corporation's stock control records, without depreciation or adjustments of any kind, upward or downward, from the original cost to the plaintiff. The stock control records are maintained by the plaintiff for each of the 20 separate departments at each of the three retail stores. Detailed records reflect the actual number of items charged to each department and the actual merchandise invoiced to the corporation through and including December 31, 1968. The stock control records reflect not only historical invoice costs of the merchandise but also show the actual disposition through and including December 31, 1968, and January 31, 1969 (the end of the corporation's fiscal year for accounting purposes). The price tags on each item of merchandise are coded to disclose the historical cost and age of each item in stock.

In accordance with a practice consistently followed by the plaintiff (and its predecessor partnership) since 1936, a physical appraisal and valuation of the

inventory on hand at each of the three retail stores on January 1, 1969, was conducted by Mr. Martin Franz and Mr. Curt Lion, principal officers of the plaintiff, each of whom possesses years of experience in the women's ready-to-wear business and is thoroughly familiar with the merchandise and all of the factors affecting the market value thereof.

It was further stipulated that the appraisal and valuation thus determined for each retail operation were reported by plaintiff as the true cash value of its inventory at each store location as of January 1, 1969, on the 1969 personal property tax report forms. Plaintiff reported the total true cash value of its January 1, 1969, inventory as follows: in Marion County, $29,819.34; in Klamath County, $26,910.43; in Jackson County, $23,224.92; a total of $79,954.26. The assessor of each county assessed the personal property taxes on the basis of such report and the plaintiff paid the taxes. After an audit by and upon the instruction of the Property Tax Division of the Department of Revenue, the assessor of each county increased the reported value of inventory as an "omitted inventory" assessment pursuant to a letter dated March 17, 1970, signed by the Department of Revenue's Inventory Appraisal Supervisor (Plaintiff's Exhibit 20). The value of property allegedly omitted from the reports, according to the Department of Revenue, as shown by the letter to the assessors, was: Marion County, $23,472.35; Klamath County, $23,500.46; and Jackson County, $25,055.74; for a total of omitted values of $72,028.55.

The defendant thus sought to change the plaintiff's long-established practice of appraising its inventory and to determine "market value" through a bookkeep-

ing formula whereby the value of merchandise on hand as of January 31, 1969, was mechanically adjusted to arrive at true cash value as of January 1, by first deducting January arrivals and then adding back to the adjusted figure the January sales, based, however, on plaintiff's 12-months' average of cost of goods sold. Using the figures for the total of the three counties involved, defendant's calculations were as follows:

| | |
|---|---:|
| Inventory, January 31, 1969, per market value as of such date | $159,860.28 |
| Plus January sales based on annual average of cost of goods sold | 83,013.60 |
| Total | 242,873.88 |
| Less merchandise purchased during January | 90,891.07 |
| Computed inventory as of January 1, 1969 | $151,982.81 |

Plaintiff argues that the defendant's method is in error in using a January 31, 1969, market value figure as a starting point in the calculations because such figure includes both newly arrived merchandise of relatively high market value and residual inventory of low market value carried over from 1968 and previous years. The composite rate of depreciation of the value of both classes of inventory is not as great as was the depreciated value of merchandise actually on hand as of January 1, 1969. Plaintiff is further aggrieved by the defendant's action in determining a "cost of goods sold" factor, based on plaintiff's January sales, and using this factor as representative of plaintiff's profit and loss for each month and therefore for the fiscal year. The defendant's method relies

in part on procedure formulated for the "average inventory method" (ORS 308.292), a method which can only be used at the taxpayer's election. It is further contended that the defendant has failed to follow its own regulation, R308.205-(B) 2 b, which provides for valuation at "[e]ither *cost* or the *lower of cost or market*" and requires consistency in the method of valuation.

As has been stated, the plaintiff made timely reports of personal property to each of the three county assessors on forms provided by the county. The values asserted by the taxpayer were accepted by the assessor in each case and entered on the roll. The Department of Revenue acted under ORS 306.129 (enacted in 1957), a statute which imposes a duty upon the department to "* * * provide annually to the various counties the services of qualified personal property appraisers for the purpose of auditing approximately 25 percent of all taxable inventory accounts in each county. * * *" The results of the La Pointe's audits were reported to the assessors and recommendation was made to them that they take action to add values of inventory pursuant to the department's findings as provided by the "omitted property" procedures found in ORS 311.205, et seq. The administrative procedures were carried out fully, resulting in the present appeals.

ORS 308.232 requires that:

"All real or personal property within each county shall be assessed at 100 percent of its true cash value."

ORS 308.215 and 308.250 require that all personal property not exempt from taxation shall be assessed at its true cash value as of January 1 at 1 a.m. ORS 308.205 defines "true cash value":

"True cash value of all property, real and per-

sonal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the Department of Revenue. With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

ORS 308.290 requires that "[e]ach return of personal property shall contain a full listing of such property and a statement of its true cash value. * * *" It further provides (in subsection (4)) that "[n]o return shall be controlling on the assessor or on the Department of Revenue in any respect in the assessment of any property. On any failure to file the required return, the property shall be listed and evaluated from the best information obtainable from other sources." The returns filed by the plaintiff gave a minimum of information (and did not show the book value of the inventory, as required by the regulation) but they were accepted by the respective assessors, and presumably represent an actual determination of value by the assessors. *Case v. Chambers et al*, 210 Or 680, 705, 314 P2d 256 (1957).

Utilizing its power to make rules and regulations (ORS 305.100, echoed in ORS 308.205), the Department of Revenue has promulgated R308.205-(B), relating to personal property valuation for tax purposes. The testimony shows that the defendant relied upon this regulation when instructing the assessors as to the values of inventory allegedly omitted from the 1969 personal property tax returns. Although the regulation uses a definition of true cash value which properly presents the statutory requirement, it then

severely limits the methods for valuing inventories. It defines "true cash value" for all personal property as the "market value as of the date of assessment in accord with the statutory definition." It then states the method for valuing inventories: "The value which is acceptable under 1-c is the determined book value. This value will apply equally to a taxpayer on a fiscal year basis or an average inventory method, as well as to those on a calendar year basis" except for mathematical adjustments. Paragraph 1-c reads:

> *"True cash value for inventories* (other than 1-b) [providing for a unit basis in certain circumstances] shall be taken to be that value as shown on the financial records of the taxpayer or the income and excise tax returns where such value reflects taxable inventories and where it is determined in accordance with those generally accepted accounting principles which are intended to approximate market values on a going concern basis."

The Oregon Supreme Court on several occasions has held that book value is not as a matter of law the equivalent of true cash value. *West House, Inc., v. State Tax Com.,* 228 Or 167, 364 P2d 598 (1961); *M & M Woodworking Co. v. Tax Com.,* 217 Or 161, 314 P2d 272, 317 P2d 920, 339 P2d 718 (1959); *Case v. Chambers et al,* 210 Or 680, 314 P2d 256 (1957); *Freightliner Corp. v. Dept. of Rev.,* 92 Adv Sh 713, — Or —, 483 P2d 1307 (1971). See also *Roseburg Lbr. Co. et al v. Commission,* 3 OTR 209 (1968).

Nevertheless, the defendant has placed heavy reliance upon the inventory figure shown in plaintiff's corporation excise tax return as of January 31, 1969, instructing the three assessors that "this must be the starting point for all computations for taxpayers oper-

ating on a fiscal year." (Plaintiff's Exhibit 20). This instruction reflects the regulation, R308.205-(B) 1 c.

The use of the income tax figure from the corporation's return is an obvious expedient to seize upon a value which must be determined annually by the taxpayer, using consistently a specific method of calculating inventory, *for income tax purposes*. These accepted methods are designed to insure the recapture by the taxpayer of its investment in inventory, before assessing income tax on the gain on retail sales which comes within the technical definition of "income." There is no necessary corollary between the income tax figure and true cash value as the latter term is defined in ORS 308.205. See II Bonbright, *Valuation of Property,* pp 906 and 1013.

■ It must be noted that ORS 308.205 provides: "* * * True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the Department of Revenue. * * *" Nevertheless, in the opinion of the court, this does not empower the department to disqualify a procedure which patently should result in a determination of true cash value, substituting a procedure which, basically, is an accounting practice designed to reflect income.① Compare the similar situation in *Case v. Chambers et al,* 210 Or 680, 708-709, 314 P2d 256 (1957). The statute cannot intend such a result and the department's regulation does not clearly require it. The court deems the regulation to be obscure to a degree and the department to be in error in relying on it to prohibit the taxpayer from using

---

① A useful discussion is found in Anderson, *Some Observations on Tax Problems with Special Reference to Inventory Valuations,* Neb St B J (1965).

an acceptable procedure. A somewhat similar situation is described in *L. J. Messer Co. v. Board of Equalization,* 171 Neb 393, 106 NW2d 478 (1960), in which the court found that a balance sheet for income tax purposes was not intended or desired to reflect the actual value of merchandise. As was testified therein (p 402): "* * * the only way that the actual value of a stock of merchandise could be determined is by an investigation and examination by experts of the actual stock in question; * * *."

Without holding that the regulation is invalid, the court finds that it cannot lawfully preclude the method of inventory treatment used by the plaintiff.

■ The testimony is clear that the plaintiff's method of historical cost, as a basic record for inventory purposes, is not commonly used because it is practicable only in relatively small organizations. It calls for a far greater expenditure of time in the maintenance of records and in appraisal of individual items of merchandise but gives the owner important information not available through use of the retail method. Since it involves complete control of the individual items and actual physical count and individual appraisal thereof, it should be more accurate than any other method if the appraisals are properly made. For example, while defendant's principal witness used a formula to compute the cost of goods sold by the plaintiff in January, 1969, there was ample testimony to prove that plaintiff's records showed actual cost to the penny.

The appraisal of property is such a subjective matter that questions as to value are inherent in the system, but the corporation's appraisers in the pres-

ent instance had the highest qualifications and there has not been the slightest testimony casting aspersions on their ability, good faith or candor. On the other hand, defendant has never seen the inventory involved, has made no physical count of the whole inventory or of a sample thereof, nor has it undertaken to make an actual appraisal of the inventory or of any part thereof. It has simply relied upon a practice which has been used as an allegedly necessary administrative expedient and substitute for actual counting and appraisal of inventories by the assessor and the department. This substitute, in and of itself, carries no guarantee that true cash value will be established.

The defendant's Orders No. VL 70-211, VL 70-335 and VL 70-305, affecting Marion, Klamath and Jackson Counties, respectively, are set aside and the assessors must restore the inventory values of plaintiff's inventory for January 1, 1969, as originally entered on the respective assessment rolls.