Argued October 3, reversed and remanded October 26, 1966

# WEYERHAEUSER COMPANY *v.* STATE TAX COMMISSION

### 419 P. 2d 608

*Joyle C. Dahl,* Portland, argued the cause for appellant. With him on the briefs were Duffy, Stout and Georgeson, Portland.

*Theodore W. deLooze,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Carl N. Byers, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN,* O'CONNELL,* GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Plaintiff filed three actions in the tax court seeking tax refunds and appealing from orders of the Tax Commission sustaining personal property tax assessments for the years 1963, 1964 and 1965. The cases were consolidated for trial and plaintiff appealed to this court from an adverse decision in the tax court. 2 OTR Adv Sh 269 (1965).

Plaintiff is a Washington corporation and is engaged in the production, manufacture and sale of forest products. It produced and cut timber in southwest Washington which was assembled in rafts on the lower Columbia River in Washington to be towed to its plant further up the Columbia River at Longview in the same state. Its purpose in taking the logs to its plant at Longview was for their manufacture into

---

* Sloan, J., and O'Connell, J., did not participate in the decision of this case.

wood products. After manufacture the products were to be sold in the ordinary course of plaintiff's business.

While in transit the rafts were temporarily stored on the Oregon side of the river in Columbia County. The interruption in transit was not due to lack of transportation facilities or natural causes, but was for the convenience of plaintiff. In each of the years in question the Columbia County Assessor assessed and plaintiff paid taxes on such log rafts as were so located in Columbia County on January 1.

It is plaintiff's contention that the logs were exempt from personal property ad valorem taxes because they were in transit under the provisions of what is known as the "Free Port Act," ORS 307.810 to 307.840. ORS 307.810 provides as follows:

"Exemption of personal property in transit (free port). (1) Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990.

"(2) Personal property within this state as mentioned in ORS 307.020 shall not include personal property in transit through this state as defined in this section."

The issue is whether the logs in question were "* * * goods, wares and merchandise destined for sale in the ordinary course of trade or business * * *."

■ One of defendant's principal contentions is that the terms "goods, wares and merchandise" as used here refers only to finished goods ready for sale. It points to that part of the quoted section which provides that the property does not lose its exempt status if, while in Oregon, it is "* * * assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged." It contends this could only refer to finished products and not to raw materials. The fact that the statute provides that certain changes in form may be brought about in finished goods in this state without depriving them of their exempt status does not necessarily mean that the statute was only intended to include goods of that kind. As a general rule the terms "goods, wares and merchandise" does not have such a limited meaning as claimed for it by defendant. See Gay's Gold, 80 US (13 Wall) 358, 20 L ed 606 (1871); *Culp v. Holbrook,* 76 Ind App 272, 129 NE 278 (1920); *French, Executrix, v. Schoonmaker,* 69 NJL 6, 54 A 225 (1903); *Crowe v. Union Automobile Ins. Co.,* 79 SW2d 168 (Tex Civ App 1935), which go so far as to hold the terms, as used in the statutes there in question, were equivalent to "personal property." In *American Cyanamid Co. v. Sharff,* 309 F2d 790 (3d Cir 1962) and *United States v. Seagraves,* 265 F2d 876 (3d Cir 1959), the court held the terms were a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce. Black's Law Dictionary, 3d ed p 851, defines them as "such chattels as are ordinarily the subject of traffic

and sale." The term "goods" is normally broad enough to cover raw materials and specifically a raft of logs.[1]

There is no contention that the logs were not to be disposed of in the ordinary course of plaintiff's business. This leaves as the critical issue whether they were "destined for sale" as required by the statute.

The commission argues they were not destined for sale but that they were destined for manufacture at the taxpayer's plant in Longview. The taxpayer contends that the logs were destined for both manufacture and sale because they were to be sold in the form of a finished product after manufacture.

Both parties to this controversy advance highly theoretical and tenuous arguments to justify their respective positions. The statute is ambiguous because it is capable of either construction, both of which are reasonable. The statute directs that "The exemption granted shall be liberally construed to effect the purpose of ORS 307.810 to 307.990." This involves an attempt to determine the legislative purpose of the Act.

■ The Act was adopted by the legislature as Oregon Laws 1959, Ch 659, p 1390. It originated as Senate Bill 424. A summary description of the Act, which was an exhibit of the Senate Taxation Committee for that session, contained the following excerpts:

> "Sponsors of the bill assert that its enactment will be beneficial to Oregon because Oregon is so geographically situated as to be a natural distribution point for commerce which either originates in or is destined to Washington, California and overseas points."
>
> *    *    *    *    *

---

[1] Paullus v. Yarbrough, 219 Or 611, 347 P2d 620 (1959) held standing timber to be goods as defined in the uniform sale act if severance was imminent.

"SB 424 is designed to enhance Oregon's status as a distribution center and to stimulate the state's economy. Its sponsors feel that its enactment will improve Oregon's competitive tax position and divert commerce through the state which otherwise would not accrue to Oregon."

An examination of the entire records of the committee leave little doubt that the purpose of the bill was to promote Oregon as a storage and distribution center thus enhancing Oregon business.

■ The transportation through, storage in, and distribution from Oregon of raw materials destined for manufacture and sale would enhance the economy of Oregon in the same manner as that of goods already manufactured and destined for sale only. Therefore, if we follow the direction of the legislature to liberally construe the statute to effect the purpose of the Act we are drawn to the conclusion that the taxpayer's property in question comes within the exemption of the Act and is not subject to ad valorem taxes in Oregon. The taxpayer is entitled to have refunded the personal property taxes which are the subject of this proceeding.

The decree of the trial court is reversed and remanded with directions to enter a decree in conformance with this opinion.

McALLISTER, C. J., dissenting.

In my opinion logs destined for manufacture into sundry wood products are not goods, wares, and merchandise destined for sale in the ordinary course of trade or business. I dissent.