# FREIGHTLINER CORPORATION *v.*
# DEPARTMENT OF REVENUE

John H. Doran, McColloch, Dezendorf, Spears & Lubersky, Portland, Oregon, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision in part for plaintiff and in part for defendant rendered November 5, 1969.

EDWARD H. HOWELL, Judge.

Two issues are involved in this appeal: (1) whether a portion of plaintiff's inventory is exempt from personal property taxation under the Oregon free port statute, ORS 307.810 and (2) the proper method of valuing plaintiff's taxable inventory. When plaintiff appealed to the tax commission (now Department of Revenue) that department held that it lacked jurisdiction to hear the valuation issue. However, in this court the Department of Revenue does not raise the jurisdictional issue and the proper method of valuing plaintiff's taxable inventory will be decided, together with plaintiff's claim for a free port exemption.

The free port statute upon which plaintiff relies provides for a tax exemption for personal property in transit through Oregon. The material part is set forth below.[1]

---

[1] "307.810 Exemption of personal property in transit (free port). (1) Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall

Part of the facts were stipulated by the parties and other evidence concerning the issues was presented during the trial.

The plaintiff, a Delaware corporation, is engaged in the manufacturing of heavy-duty trucks in Portland, Oregon. Each truck is custom built for the purchaser who specifies the type and size of engine, transmission, axles, tires, wheels, et cetera, desired on the truck. The parts used in the building process are manufactured both within and without the state.

After the parts have been obtained and the trucks assembled they are sold by plaintiff to either Consolidated Freightways, Inc., plantiff's parent corporation, or to White Motor Company, plaintiff's exclusive marketing agent. Most of the sales to Consolidated Freightways, Inc. are delivered to Consolidated in Portland for shipment to the ultimate user out of state, although some trucks remain in Oregon. In some instances plaintiff ships Consolidated trucks directly to the out-of-state user.

All other sales were made to White Motor Company and the trucks delivered to them at Portland. White Motor Company, in acting as the sales agent for the sale of plaintiff's trucks that were not manufactured for and sold to Consolidated, accepts orders for plaintiff's trucks, transmits the orders to plaintiff, pays plaintiff for the trucks, accepts delivery at Portland and resells the trucks to the purchaser who ordered them. In some instances a White Truck dealer

---

not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990.

"* * * * *."

will buy a truck from White Motor Company in order to have a truck in a display room to show prospective customers.

The parties have stipulated to a representative list of some 500 parts that are used to produce a completed truck. The list includes, among other items, engines, axles, brakes, drivelines, fifth wheels, starters, generators, transmissions and wheels. Some of the items used in making the truck are manufactured by plaintiff. Others, such as engines, are brought in from out of state and starters, generators and other parts, including some items manufactured by plaintiff, are added to the engine.

The plaintiff is claiming the free port exemption for only those truck parts which are manufactured or produced outside Oregon and are shipped here to be used in the construction of the truck. The plaintiff is not claiming the exemption for the parts used in trucks which are not shipped outside of Oregon.

To be entitled to an exemption under the free port statute, it is necessary that the personal property involved be manufactured or produced outside this state and brought here for transshipment to an out-of-state destination in the ordinary course of plaintiff's trade or business. The statute also requires that the personal property was either being shipped or held in public or private storage awaiting shipment. The property does not lose the exemption "because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. * * *"

The defendant found, and the evidence established, that a substantial portion of plaintiff's inventory was

shipped to plaintiff from out-of-state manufacturers or producers. Assuming, without deciding, that these goods which were assembled into trucks and which were sold to Consolidated Freightways, Inc. and White Motor Company in the state of Oregon for delivery elsewhere constituted goods in transit through this state as contemplated by the free port statute, the primary question is whether plaintiff's manufacturing of the parts into completed trucks constitutes more than the assembling, binding and joining allowed by the statute.

The trucks are assembled at plaintiff's Basin Avenue plant using a regular assembly line. When the necessary parts are available, either from plaintiff's inventory or from order, the assembling or manufacturing of the truck begins. The building process starts with the frame rails which are pulled down the assembly line by a chain. As the rails progress down the line the axles, engine, radiator, wheels, cab and other items are installed. The truck is painted and after final inspection it is ready for delivery. While the truck is being assembled it is possible to remove or change an item if the customer requests the change. The various parts—some of which are included in plaintiff's claim for exemption and some of which are not—are attached or put together by means of welding, bolting, screwing, gluing or riveting.

■ The Oregon free port statute was adopted by the legislature as Oregon Laws 1959, ch 659. The purpose of the act was to promote Oregon as a storage and distribution center for goods brought into this state for transshipment out of state. *Weyerhaeuser Co. v. Tax Com.*, 244 Or 561, 419 P2d 608 (1966).

■ The evidence clearly establishes that plaintiff is in the business of manufacturing trucks; it is not in the business of warehousing or being a storage and distribution center for goods brought into this state for transshipment out of state. Although the statute provides that the exemption is not lost because the goods are assembled, bound or joined while in the warehouse, the plaintiff's business of building trucks starting with a frame rail and ending with a completed truck ready for delivery goes beyond the type of assembling, binding or joining contemplated by the free port statute.

While the plaintiff is not claiming the exemption for all the parts used to make a completed truck, it is clear that when all the parts—exempt and nonexempt —are put together by the various means mentioned, a completed truck results. The total process does not constitute the operation of a storage and distribution center and is more than the binding, joining and assembling allowed by the free port statute.

If the plaintiff as a manufacturer of trucks is entitled to the benefit of the free port act, then every manufacturer in Oregon who purchases parts from out of state and assembles them into a unit for shipment out of state is entitled to the exemption. This is not the warehousing, storing and distributing that was intended by the act.

The case of *Gunderson Bros. v. Commission*, 3 OTR 315 (1968), *appeal pending,* is not applicable. There the plaintiff was engaged in manufacturing railroad cars and was seeking the free port exemption for those items which composed the wheels and axles only. No exemption was claimed for the railroad car which was merely placed on a pin on the axles. The wheels

and axles were not welded but were held together by pressure and weight. Here plaintiff's activities in riveting, welding, gluing, bolting and screwing the parts together to form a completed truck far exceed those involved in *Gunderson*.

■ Although ORS 307.810 requires a liberal interpretation of the statute the plaintiff's operations exceed the activities contemplated by the free port statute and the plaintiff is not entitled to the exemption.

The second issue involves the proper method of valuing plaintiff's inventory for ad valorem personal property taxes.

ORS 308.232 requires all personal property in the county to be assessed at 100 percent of its true cash value which means market value as of the assessment date. The Department of Revenue is given authority by ORS 308.205 to enact rules and regulations to establish the methods and procedures of determining the true cash value of property. The defendant's Reg 308.205-(B) states that true cash value of inventories shall be the value shown on the financial records of the taxpayer where the value "reflects taxable inventories and where it is determined in accordance with those generally accepted accounting principles which are intended to approximate market values on a going concern basis." The regulation provides generally that the acceptable value of inventories is "the determined book value" and that book value shall be determined by using cost or the lower of cost or market.

Paragraph (2)(d) of the same regulation states that the book value of the inventory shall be reported to the assessor whether or not a different market value is claimed on the personal property tax return.

The plaintiff carried the book value of its inven-

tory at gross cost of the goods and contends it was entitled to deduct federal excise taxes paid, discounts and rebates and allowances received and to adjust its standard cost of manufacturing to actual cost in order to arrive at a net cost for personal property taxation. The defendant contends that the excise taxes paid are not a proper deduction from gross cost and that the other deductions are not allowable because plaintiff's inventory was carried on its books at gross value, instead of net value.

In regard to the excise taxes the plaintiff's controller testified that plaintiff has an exemption from federal excise taxes on purchased parts; that the plaintiff's vendors will not add the excise tax to the parts sold to plaintiff unless the plaintiff specifically requests that the excise tax be included; that plaintiff in some instances "for expediency in accounting" will request that the excise taxes be added to the cost of the goods purchased.

In those cases where the excise tax has been added to the parts sold to plaintiff the excise tax constitutes a part of the total cost to plaintiff. Theoretically, at least, it would be included in the price plaintiff obtained for the truck and would enhance the value of the truck. The plaintiff is not entitled to exclude the excise tax for personal property tax purposes.[2] See *Marc Lance Ford, Inc. v. Porterfield,* 18 Ohio St2d 219, 248 NE2d 618 (1969).

The discounts, which are given to the plaintiff by

[2] The county granted an exemption under the free port statute for certain parts that were brought in from out of state, held for resale out of state and which were not used in the manufacturing of plaintiff's trucks. The county also eliminated the excise taxes paid on these goods; therefore, the exempt goods and the excise taxes thereon are not included in the instant case.

some vendors if plaintiff's account is paid within a certain time, are taken advantage of by plaintiff wherever possible. The purchases are entered on plaintiff's books at the gross purchase price and if and when the discount is received by plaintiff it is entered in a miscellaneous income account for purposes of accounting simplicity.

The rebates and allowances are given plaintiff by some suppliers as a business inducement when plaintiff has purchased a certain amount from the supplier. The amount of the gross purchase is entered on plaintiff's books and the amount of the rebate or allowance when received is also entered in the miscellaneous income account.

The claimed deduction for actual cost as compared to standard cost arises as follows: The items manufactured by plaintiff are carried on plaintiff's books at "standard cost" which, in effect, is an estimate or approximation of cost under normal conditions and a normal length of time to construct the items. From time to time the actual cost of the parts is determined and plaintiff's income statement is adjusted to show the actual cost.

No price adjustments are made to the customer as a result of the plaintiff receiving a discount or a rebate and allowance. The receipt of such discount or rebate and allowance is considered to be additional income for plaintiff. Also the customer is not affected by the adjustment from standard cost to actual cost although it is conceivable that a determination of actual cost over a period of time could cause plaintiff to make adjustments in the cost of the truck to the customer.

Although it is not entirely clear from the evidence,

the auditor for the county Department of Revenue and counsel for the defendant at the trial apparently believed that the discounts, rebates and allowances and actual cost would have been allowed to plaintiff if plaintiff had carried its inventory on its books at actual cost as compared to gross cost.

■ The fact that the plaintiff carried its inventory on its books at a value which represented gross cost of the inventory should not preclude plaintiff from showing the actual cost of the inventory. As a matter of law book value is not necessarily the equivalent of true cash value. *West House, Inc. v. State Tax Com.,* 228 Or 167, 364 P2d 598 (1961) ; *M & M Woodworking Co. v. Tax Com.,* 217 Or 161, 314 P2d 272, 317 P2d 920, 339 P2d 718 (1959); *Roseburg Lbr. Co. et al v. Commission,* 3 OTR 209 (1968).

While the cases of *West House, Inc.,* and *Roseburg Lbr. Co.* are authority for the general rule that book value is not the equivalent of true cash value as a matter of law, the facts in the former cases are not the same as in the instant case. In *West House* and *Roseburg* the taxpayers reported a lesser value than book value on their personal property tax returns. The assessors accepted the values reported as being book value. On audit the difference was added as omitted property. In the instant case the plaintiff reported the book value of its inventory and, as allowed by the defendant's regulation,[9] also reported the net value of the inventory after deductions

---

[9] Reg 308.205-(B)(2)(d):

"d. The book value of the inventory shall in all cases be reported to the assessor whether or not a different market value is claimed by the taxpayer on the property tax return."

for excise taxes, discounts, rebates and allowances and actual cost.

The argument that the tax commission advanced in *Roseburg Lbr.* that book value should be accepted as true cash value because the assessors do not have the time and personnel to audit every personal property tax return to determine if the reported value was the same as book value is not present in the instant case because the plaintiff in its personal property tax return followed defendant's regulation and specifically called attention to the difference in the book value and the reported value of its inventory.

■ The defendant's argument that the discounts, rebates and allowances should not be considered in determining actual cost of plaintiff's inventory because the inventory was carried on plaintiff's books at gross instead of net cost is without merit.

■ The final issue is whether plaintiff is entitled to use actual cost as compared to standard cost in determining the true cash value of its inventory. Plaintiff's inventory was valued at cost as allowed by defendant's Reg 308.205-(B) (2) (b). The regulation also states that specific cost is one of the methods for determining actual cost. The standard cost which plaintiff carried on its books represented an approximation of actual cost. When the actual cost was determined plaintiff reported both to the assessor and claimed the actual cost as the true cash value. Because the actual cost to plaintiff of manufacturing an item is the specific cost of the item, the actual cost of the inventory that plaintiff manufactured should have been accepted as its true cash value.

The plaintiff is not entitled to deduct the excise taxes to determine the true cash value of its inventory

for personal property tax purposes. It is entitled to have the inventory valued at actual cost including the deduction for discounts and rebates. It is not entitled to the free port exemption for the goods brought in from out of state and used in the manufacturing of the trucks.

The order of the defendant Department of Revenue is modified to the extent indicated herein.