# HYSTER COMPANY *v.* DEPARTMENT OF REVENUE

Peter B. Higgins and Russell M. Helterline, Black, Helterline, Beck and Rappleyea, Portland, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 31, 1971.

Loren D. Hicks, Judge Pro Tempore.

The issue is whether certain items of inventory of plaintiff taxpayer were exempt from personal property tax assessment under Oregon's Free Port Act, ORS 307.810 to 307.990, for the tax year 1967-68. Plaintiff's claim for exemption was disallowed by the Multnomah County Assessor. Plaintiff appealed to the State Tax Commission (now the Department of Revenue) and, failing to prevail there, appealed to this court.

The plaintiff produces and sells forklift trucks, straddle carriers, towing winches and other similar products, referred to as industrial trucks. These products, so far as plaintiff's Oregon operations are concerned,[1] are assembled in a plant in Portland from parts fabricated locally by plaintiff, parts purchased from others and further processed by plaintiff and parts purchased from others which are not further processed by plaintiff.

The frames and carriages for the industrial trucks are fabricated in plaintiff's plate shop. Each frame is moved from station to station along an assembly line where axles, wheels, tires, transmission, hydraulics, engine, brakes, battery and the many other components are added by bolting the parts to each other and onto the frame. Once assembled, a truck can be disassembled into its many original parts without any damage to those parts.

The plaintiff maintains an inventory of parts in Multnomah County and keeps accurate records of the

---

[1] Plaintiff has seven plants in the U.S., two in Canada and six overseas.

source and destination of each part. Plaintiff also compiled detailed records concerning the source and destination of all parts for which it claimed exemption.

Decision in this case is controlled by ORS 307.810 (1) which provides:

"(1) Personal property in transit through this state is goods, wares and merchandise destined for sale in the ordinary course of trade or business, manufactured or produced outside the state and brought into the state for transshipment to an out-of-state destination (other than the county of origin), while being so shipped or while held in public or private storage awaiting further shipment. Such property is deemed to have acquired no situs in Oregon for purposes of taxation. Such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, disassembled, divided, cut, broken in bulk, labeled, packaged, relabeled or repackaged. The exemption granted shall be liberally construed to effect the purposes of ORS 307.810 to 307.990."

Plaintiff contends that any parts which it purchases out of state and, without further processing, sells out of state as identifiable components of a finished industrial truck are "property in transit through this state" while in plaintiff's Portland plant and "have acquired no situs in Oregon for purposes of taxation." In support of this contention plaintiff particularly relies on the provision of ORS 307.810 (1) that, "Such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, * * *."

The free port statute was introduced into the 1959 session of the Oregon legislature as Senate Bill 424. The Oregon Supreme Court, after studying the entire

record of the Senate Committee which handled the bill, stated in *Weyerhaeuser Co. v. Tax Comm.*, 244 Or 561, 566, 419 P2d 608 (1966), there was:

> "* * * little doubt that the purpose of the bill was to promote Oregon as a storage and distribution center thus enhancing Oregon business." (244 Or at 566.)

The court held in that case that logs produced and cut in the State of Washington and rafted on the Columbia River and temporarily stored on the Oregon side awaiting further shipment to another point in Washington to be manufactured into various wood products were "goods, wares and merchandise destined for sale in the ordinary course of trade or business" and were in transit and exempt from taxation under the free port law.

In a case before this court, *Riviera Motors v. Commission*, 2 OTR 241 (1965), both sides agreed that foreign autos and auto parts imported by Oregon dealers for resale out of state were exempt under the Act. The issue was the procedure used by the taxpayer to claim the exemption. The court found that the taxpayer's use of a percentage allocation based on previous out-of-state sales was proper.

In *Gunderson Bros. v. Commission*, 3 OTR 315 (1968), this court held that the assembling and binding together of railroad "trucks" (made up of wheels, axles, etc., purchased out of state) and placing a locally manufactured car frame thereon did not constitute manufacturing so as to disqualify the component truck parts from exemption under the free port law. The basis of the decision was the finding that the truck parts were not manufactured into a railroad car, but that such parts were held in segregated warehouse

storage until assembled into units without welding or any other processing or loss of identity and then placed under the cars for attachment by a removable pin. *Gunderson* was affirmed by the Oregon Supreme Court in *Gunderson Bros. Eng. v. Tax Comm.,* 256 Or 98, 471 P2d 802 (1970), upon the technicality that the Tax Commission had stipulated in the exact language of the statute and thus irretrievably brought the facts within the statute. The majority of the court stated, however, that:

> "If we were to interpret these facts and the statute, apart from any stipulation, we would have grave doubts whether the taxpayer is entitled to the free port exemption; * * *." (256 Or at 100.)

Also, three justices of the court entered a strong dissent on the basis that the truck parts were assembled into a finished product as a part of its manufacturing business and not as a part of a warehousing or storage business.

The only other decision construing the Oregon free port law was by this court in *Freightliner Corp. v. Dept. of Rev.,* 3 OTR 528 (1969), *aff'd,* 258 Or 478, 483 P2d 1307 (1971), wherein it was held that the putting together of parts to form completed motor trucks constituted more than the assembling, binding and joining allowed by the statute. The assembly process in *Freightliner* was similar to that now before the court. As each truck frame was moved down an assembly line, the axles, wheels, engine, and other items were installed. All of the parts for which exemption was claimed retained their identity and later could have been removed from the vehicle without being damaged even though some of them were attached by means of welding, gluing and riveting. The decision stated:

> "The evidence clearly establishes that plaintiff

is in the business of manufacturing trucks; it is not in the business of warehousing or being a storage and distribution center for goods brought into this state for transshipment out of state. Although the statute provides that the exemption is not lost because the goods are assembled, bound or joined while in the warehouse, the plaintiff's business of building trucks starting with a frame rail and ending with a completed truck ready for delivery goes beyond the type of assembling, binding or joining contemplated by the free port statute." (3 OTR at 533.)

In distinguishing *Gunderson Bros. v. Commission, supra,* the decision stated:

"* * * There the plaintiff was engaged in manufacturing railroad cars and was seeking the free port exemption for those items which composed the wheels and axles only. No exemption was claimed for the railroad car which was merely placed on a pin on the axles. The wheels and axles were not welded but were held together by pressure and weight. Here plaintiff's activities in riveting, welding, gluing, bolting and screwing the parts together to form a completed truck far exceed those involved in *Gunderson*." (3 OTR at 533-534.)

■■ None of these decisions discussed the meaning of "property in transit through this state." A taxpayer who is claiming exemption must affirmatively show that the claimed property is in transit through this state and meets all of the qualifications for exemptions set forth in the statute. He must prove that the property (1) is goods, wares and merchandise (2) destined for sale in the ordinary course of his trade or business, (3) having been produced outside the state and (4) brought into the state for *transshipment* to an out-of-state destination (other than the county of origin) and (5) is *being shipped* or is being *held in storage awaiting further shipment.*

The evidence shows that plaintiff's property does not qualify. Although the parts for which plaintiff claims exemption may have been goods, wares and merchandise destined for sale in the ordinary course of trade or business and may have been produced outside the state and sold out of state, they were not "property in transit through this state" within the meaning of the Act. The parts were not brought into the state for transshipment and they were not in the process of being shipped and they were not being held in storage awaiting further shipment.

The plaintiff is in the business of manufacturing and wholesaling forklift trucks and other industrial trucks and is not in the warehousing, storage, distribution or shipping business. The parts in question are brought into the state and are held in inventory awaiting the manufacturing process. They are not brought here for transshipment and are not held in storage awaiting shipment. Batteries, for example, are not imported into Oregon by plaintiff for the purpose of breaking down bulk lots of them into smaller quantities or individual units for transshipment out of state. Plaintiff brings batteries into the state for the purpose of adding them to plant inventory for use in the manufacturing of its product. When the batteries arrive in inventory they cease to be in transit and therefore are not exempt from taxation under the Free Port Act.

Plaintiff points out that ORS 307.810 (1) provides that the Act shall be liberally construed. "Liberally construed," however, does not mean liberally extended. As this court said in *Freightliner Corp. v. Dept. of Rev.*, *supra*:

"If the plaintiff as a manufacturer of trucks is

entitled to the benefit of the free port act, then every manufacturer in Oregon who purchases parts from out of state and assembles them into a unit for shipment out of state is entitled to the exemption. This is not the warehousing, storing and distributing that was intended by the act." (3 OTR at 533.)

Because of the court's finding that plaintiff's goods are not "property in transit," the proviso in ORS 307.810 (1) that "such property shall not be deprived of exemption because while in the warehouse the property is assembled, bound, joined, * * *" is not material to the case. However, plaintiff so emphasized the passage, arguing in effect that it is the real heart of the law, the court feels a comment thereon is appropriate.

This clause recognizes that, as a beneficial part of the warehouse business in Oregon, items of merchandise imported from outside the state for transshipment to new destinations outside the state in and by themselves might be disassembled, assembled, packaged, repackaged, or otherwise divided, cut, broken in bulk, bound, joined and labeled while in the Oregon warehouse. Permission to combine and assemble various such items into a new and different product is conspicuously absent.

The assembling of many different items and parts into a new product is well recognized in American case law as manufacturing. For example, in *Klepper v. Carter,* 286 F 370 (9th Cir 1923), 2 AFTR 1829, 1 USTC ¶ 73, plaintiff purchased automobile trucks without bodies from one dealer and automobile truck bodies from another supplier and sold the completed trucks. The court held plaintiff was a manufacturer

of trucks. In *Select Imports, Inc. v. Campbell*, 196 F Supp 181 (ND Tex 1961), 8 AFTR2d 6113, 61-2 USTC ¶ 15,358, a taxpayer who purchased cigarette lighter mechanisms and metal cups from producers and sold them as assembled lighters was held to be a manufacturer. "One may be a manufacturer by assembling articles or fabrics that someone else has made and by reason of the assembly produce useful articles and be a manufacturer."

In a case involving mercantile taxes assessed against a company which produced heavy equipment for steel mills, the court stated:

"\* \* \* An automobile is manufactured from frames, wheels, fenders, cushions, windshields, doors, engines, radiators, generators, batteries, light globes, spark plugs and a thousand other parts, *all* of which might possibly be manufactured by other companies. Applying the tests used by the Supreme Court since Norris Brothers v. The Commonwealth, 27 Pa. 494 (1856) leaves no doubt that making an automobile would be manufacturing whether or not it was merely the assembling of parts manufactured by many other companies. Except for the simplest items, such as screws, cloth and glass, manufacturing today is largely the assembling of many manufactured parts from which are made 'a new, different and useful article.' Assembling is an indispensable part of the making of all complicated articles and is a part of the manufacturing process of all such articles. (*Appeal of Titzel Engineering, Inc.*, 204 Pa Super 457, 205 A2d 700 (1964).)

Plaintiff in the case at bar creates, through design, engineering, skill and labor, an entirely new product from many different fabricated parts by assembling and connecting such parts to each other. This is manufacturing and manufacturing is not the

assembling, binding and joining contemplated and permitted by ORS 307.810 (1). Even if the parts were in transit while held in plaintiff's inventory, and the court finds to the contrary, they were deprived of the exemption because of their use in the manufacturing process.

Defendant's order is affirmed.